ROBERT C. REDA *et al.*, Plaintiffs-Appellants, v. JOSEPH M. OTERO, Indiv., *et al.*, Defendants-Appellees (The Department of Professional Regulation, Defendant and Intervenor-Appellee).

Second District   No. 2—92—1071

Opinion filed October 20, 1993.

Robert S. Reda and Scott D. Verhey, both of Robert S. Reda & Associates, P.C., of Chicago, for appellants.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Professional Regulation.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Robert C. Reda and Robert S. Reda, appeal from an order of the circuit court of Lake County directing defendant-intervenor, the Illinois Department of Professional Regulation (Department), to pay plaintiffs $11,958.65 from the Real Estate Recovery Fund (Fund) (225 ILCS 455/23 (West 1992)). Plaintiffs claim that the trial court erred by limiting their recovery to $10,000 plus costs and attorney fees and that they are each entitled to an award of $10,000 plus a total of $3,458.65 in costs and attorney fees, for a total of $23,458.65. For the reasons that follow, we reverse.

Plaintiff Robert C. Reda is an Illinois businessman and the father of plaintiff Robert S. Reda. Defendant Joseph M. Otero was owner and president of Provident Realty Group, Inc., and a real estate broker licensed by the Department. On March 8, 1990, plaintiffs agreed to invest a total of $40,000 for the development of real estate purportedly owned by defendant. Plaintiffs gave defendant $37,500 with the remaining $2,500 to be delivered at closing.

Plaintiffs filed suit against defendant on May 16, 1991, alleging that defendant failed to conclude the development project as agreed. Plaintiffs notified the Department of their intent to collect any unsatisfied judgment from the Fund and on July 1, 1991, the trial court granted plaintiffs leave to serve the Director of the Fund. Defendant failed to appear or otherwise defend, and on February 10, 1992, the trial court entered judgment for plaintiffs in the amount of $37,500.

After unsuccessfully attempting to collect the $37,500 from defendant, plaintiffs filed on July 13, 1992, a verified petition for a court order directing payment out of the Fund. In the petition,

plaintiffs alleged that they were unable to collect on the judgment and that they incurred attorney fees and court costs in the amount of $7,807 and $458.65, respectively. Plaintiffs requested that the trial court enter an order directing payment in the amount of $23,458.65. Plaintiffs claimed that they were each entitled to the maximum award of $10,000 allowed by statute, plus a total of $3,000 in attorney fees and $458.65 in costs. The Department claimed that the statute creating the fund limited their recovery to a total of $10,000 plus costs and attorney fees.

On August 6, 1992, the trial court ordered the Department to pay plaintiffs $11,958.65 from the fund. This sum included what the court thought to be the statutory maximum recovery amount of $10,000 plus $1,500 for attorney fees and $458.65 for court costs. Plaintiffs filed this timely appeal.

■■ The Fund is designed to provide payment to persons who have obtained a valid but unsatisfied judgment against a licensed real estate broker arising out of the broker's professional activities. (225 ILCS 455/25(g), (h) (West 1992).) The provision at issue in this appeal, section 23 of the Real Estate License Act of 1983 (Act), reads in pertinent part as follows:

"The Department shall establish and maintain a Real Estate Recovery Fund from which any person aggrieved by an act, representation, transaction or conduct of a duly licensed broker *** [which] results in money or property being unlawfully obtained from any person by false pretenses *** or by reason of any fraud, misrepresentation, discrimination or deceit by or on the part of any such licensee *** and which results in a loss of actual cash money *** may recover. Such aggrieved person may recover *** an amount of not more than $10,000 from such fund for damages sustained by the act, representation, transaction, or conduct, together with costs of suit and attorneys' fees incurred in connection therewith of not to exceed 15% of the amount of the recovery ordered paid from the Fund. ***

The maximum liability against the Fund arising out of any one act shall be as provided in this Section and the judgment order shall spread the award equitably among all co-owners or otherwise aggrieved persons, if any. The maximum liability against the Fund arising out of the activities of any single broker *** shall be $50,000." 225 ILCS 455/23 (West 1992).

Plaintiffs argue on appeal that section 23 of the Act should be interpreted as stating that whenever two or more persons are ag-

grieved by the single act of a real estate broker, each aggrieved person may recover up to $10,000 from the Fund plus costs and attorney fees, with a maximum recovery of $50,000. Under this interpretation, plaintiffs would be allowed to recover a total of $20,000 plus $3,000 for attorney fees (15% of $20,000) and $458.65 for court costs.

The Department contends that the trial court correctly ruled that the maximum recovery from the Fund based on a single transaction involving a real estate broker is $10,000 plus costs and attorney fees regardless of the number of persons aggrieved as a result of the transaction. The Department also claims that, even if this court were to adopt plaintiffs' interpretation of the statute, a remand of the cause would still be necessary to determine the amount each plaintiff contributed to the real estate venture. Finally, the Department argues that the trial court's calculations regarding the appropriate amount of costs and attorney fees are incorrect and should be remedied on remand.

The parties' dispute in this case involves the maximum recovery from the Fund that plaintiffs are entitled to by virtue of their single transaction with defendant. Section 23 of the Act states that the "maximum liability against the Fund arising out of any one act shall be as provided in this Section." (225 ILCS 455/23 (West 1992).) In determining the legislative intent with respect to the maximum liability against the Fund for a single transaction it is necessary to look first to the language of the statute, and if the language used is certain and unambiguous, it will be given effect without resort to other aids in construction. *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 91; *Interlake, Inc. v. Industrial Comm'n* (1983), 95 Ill. 2d 181, 192-93.

■ To resolve this dispute, it is necessary to determine whether the language "as provided in this Section" refers to the $10,000-per-person limitation contained in the first paragraph or the $50,000-per-broker limitation contained in the second paragraph. In making this determination we rely on the language of section 23 and the well-established principle that a statute should not be construed so that its specific language is rendered meaningless or superfluous. (*People v. Singleton* (1984), 103 Ill. 2d 339, 345; *Maske v. Kane County Officers Electoral Board* (1992), 234 Ill. App. 3d 508, 512.) Section 23 clearly states that "any" person aggrieved by a fraudulent act of a real estate broker may recover from the Fund and that each "aggrieved person" may recover up to $10,000 from the Fund. (225 ILCS 455/23 (West 1992).) To interpret this provi-

sion as allowing a maximum recovery of $10,000 in situations where two or more persons have suffered a loss as a result of a single transaction with a real estate broker would render the language allowing each aggrieved person a recovery of up to $10,000 superfluous. Section 23 clearly speaks of a maximum recovery of $10,000 per aggrieved person, and, therefore, we must give effect to the intent of the legislature as indicated by this language. Therefore, we conclude that the maximum liability against the Fund arising out of a single transaction with a real estate broker is $50,000.

The Department advances several arguments in support of a contrary conclusion. Initially, the Department points out that at the time of the establishment of the Fund in 1973 there was no $50,000 limitation (Ill. Rev. Stat. 1973, ch. 114½, par. 108.1 (now codified, as amended, at 225 ILCS 455/23 (West 1992))), and therefore the $10,000 limitation was the only potential subject of the first sentence of the second paragraph of this provision. The Department argues that as the statute was originally enacted, a maximum of $10,000 could be recovered from the Fund per transaction and the later amendment adding the $50,000 limitation on total transactions by a single broker (Ill. Rev. Stat. 1975, ch. 114½, par. 108.1 (now codified, as amended, at 225 ILCS 455/23 (West 1992))) did not change the legislature's intent with regard to the $10,000 limitation.

Consideration of the original language of the statute does not mandate the result advocated by the Department. Even if we were to rely on the original language of the statute, we would conclude that plaintiffs would still be entitled to a recovery of $10,000 each. The language in the 1973 version of the statute likewise stated that the maximum liability against the Fund for a single act "shall be as provided in this Section." (Ill. Rev. Stat. 1973, ch. 114½, par. 108.1 (now codified, as amended, at 225 ILCS 455/23 (West 1992)).) We agree that in 1973 this provision could only have referred to the $10,000 limitation in the first paragraph. We interpret this provision, however, as stating that the maximum liability against the Fund arising out of any one act is $10,000 per aggrieved person. To interpret this provision otherwise would, as we have already stated, render the language allowing each aggrieved person a maximum recovery of $10,000 superfluous.

We note that this interpretation does not render the statute's direction to the court to "spread the award equitably among all co-owners or otherwise aggrieved persons" meaningless or superfluous. If, for example, the plaintiffs in this case had invested a to-

tal of $20,000, with the father contributing $15,000 and the son contributing $5,000, the appropriate total recovery from the Fund would be $15,000. After entering the order directing payment from the Fund in the amount of $15,000, the trial court would then proceed to divide the award equitably among the two aggrieved persons. In this hypothetical, the equitable distribution would be an award of $10,000 to the father and $5,000 to the son. Thus, in some instances, the trial court will spread the award equitably by awarding all plaintiffs $10,000 each, and in other instances the equitable distribution will require an award of $10,000 for some plaintiffs and an award of less than $10,000 for others.

Even if we were to adopt the Department's interpretation of the statute as it existed in 1973, we would nevertheless conclude that today the maximum liability against the Fund arising out of a single transaction with a single real estate broker would be $50,000. Generally, an amendment is presumed to change the law as it formerly existed, and this presumption of change is rebutted only if the circumstances surrounding the enactment of the amendment suggest otherwise. *Hession v. Illinois Department of Public Aid* (1989), 129 Ill. 2d 535, 543.

If, as the Department argues, the law as originally enacted limited recovery to $10,000 per transaction in every instance, then there exists a presumption that the 1975 amendment changed that law, enhancing the maximum recovery per transaction. The Department cites no authority or legislative history suggesting that this was not the purpose of the amendment, and, accordingly, we will not ascribe the same meaning to this provision today as the Department claims it possessed prior to the amendment.

The Department's next argument is based on the definition of the term "person" contained in section 4(16) of the Act. Section 4(16) states that " '[p]erson' means and includes individuals, corporations and partnerships." (225 ILCS 455/4(16) (West 1992).) The Department argues that because the Act's definition of "person" speaks of "individuals," the two plaintiffs together constitute only one "person" for purposes of recovering from the Fund and are therefore entitled to only one recovery in the amount of $10,000. We decline to adopt the Department's strained interpretation of this definitional provision. The language in a statute should be given its plain and commonly understood meaning unless the intention of the legislature is to the contrary. (*Scadron v. City of Des Plaines* (1992), 153 Ill. 2d 164, 185.) The more plausible interpretation of this provision is that if an entity falls within the classification of en-

tities known as individuals, then that entity is a "person" for purposes of recovery from the Fund. If the legislature intended such an unusual definition of the term "person" as the Department suggests, then it is likely that it would have expressed such an intent more clearly. See, *e.g.*, Weights and Measures Act (225 ILCS 470/ 2(1) (West 1992) (" 'Person' means both singular and plural as the case demands, and includes individuals, partnerships, corporations, companies, societies and associations")).

The Department's next contention is that the Act's legislative history supports its interpretation of the limitation provision. When the house bill that was ultimately passed into law came back from the senate with an amendment, Representative Walsh, one of the bill's sponsors, summarized some of the bill's main points. Concerning the limitation provision, Representative Walsh stated that the bill "also provides that the maximum liability *** is $10,000. That is that only $10,000 can be recovered from the recovery fund from one incident so that if there were two contract purchases [*sic*] *** each of whom lost $10,000, they would have to share *** in the $10,000 recovery." (78th Ill. Gen. Assem., House Proceedings, June 30, 1973, at 39 (statements of Representative Walsh).) The Department claims that plaintiffs' interpretation is directly contrary to Representative Walsh's interpretation upon which the General Assembly voted.

Reliance on these legislative statements is neither necessary nor warranted. First, because we have already determined that the language of section 23 clearly speaks of a maximum recovery of $10,000 per aggrieved person, reliance on extrinsic aids in construction such as legislative history is unnecessary. *Abrahamson*, 153 Ill. 2d at 91; *Interlake, Inc.*, 95 Ill. 2d at 192-93.

Second, even if we were to turn to the legislative history as an aid in construing the limitation provision of section 23, we would not consider these statements of an individual legislator to be meaningful evidence of legislative intent. Statements of individual legislators made during legislative debate assist in revealing the legislative intent behind a statute only when examined in the context of the debate in its entirety. Statements of individual legislators made outside the context of legislative debates are generally immune from the verbal interplay and the presentation of countervailing ideas inherent in the debate process. (*Morel v. Coronet Insurance Co.* (1987), 117 Ill. 2d 18, 24-25.) The statements of Representative Walsh, which were not made in the context of legislative debates but instead in the context of a summary of the senate

amendments to the bill, do not necessarily reflect the intent of the legislature as a whole when the bill was debated and passed.

Finally, Representative Walsh's statements were made before the 1975 amendment which added the $50,000 limitation to section 23. It is unlikely, therefore, that Representative Walsh's interpretation of the bill as it existed in 1973 is an accurate interpretation of section 23 as it exists today.

The Department cites to two cases from the Appellate Court, First District, which it claims support its interpretation of section 23. In both of those cases, there were two plaintiffs who jointly entered into a transaction with a real estate broker and lost more than $10,000 each as a result of fraud on the part of the broker. The trial courts in both cases allowed a total recovery of only $10,000 from the Fund plus costs and attorney fees. (*Daly v. Three Star Enterprises, Inc.* (1982), 110 Ill. App. 3d 386, 387; *Jones v. Anderson* (1978), 62 Ill. App. 3d 284, 287.) The Department contends that the actions of the trial courts in these cases lend further support to its claim that section 23 provides for a maximum recovery of $10,000 per transaction regardless of the number of persons aggrieved as a result of the transaction.

The reviewing court in both cases did not have an opportunity to address the propriety of limiting the plaintiffs' recovery to $10,000 because the parties did not raise this issue on appeal. The reviewing court in both cases affirmed the orders of the trial court on other grounds which were raised in the appeal. (*Daly*, 110 Ill. App. 3d at 389 (15% limitation on attorney fees and costs is based on the amount actually recovered from the Fund and not on the amount of damages awarded in the underlying action against the broker); *Jones*, 62 Ill. App. 3d at 288-89 (trial court's judgment that plaintiffs had complied with the statutory requirements and were thus entitled to recovery from the Fund was not erroneous).) In the absence of an affirmative ruling by the reviewing court in those cases on the maximum recovery allowed in such situations, we are unable to rely on those cases as authority governing this case.

■■ In light of all the foregoing, we conclude that section 23 of the Act allows each person aggrieved as a result of a single transaction with a real estate broker to recover up to $10,000 from the Fund, with the maximum total recovery being $50,000. Under this interpretation, if, for example, six plaintiffs each suffered a loss in excess of $10,000 as a result of a single transaction with a real estate broker, the total recovery from the Fund would be limited to $50,000, as opposed to $60,000, and the trial court would be re-

quired to spread the award equitably among all six plaintiffs, which, in this example, would mean that the six plaintiffs would share equally in the $50,000. This interpretation of the Fund provisions gives effect to the legislature's intent as evidenced by the language of the statute and furthers the Act's purpose of allowing only a limited recovery from the Fund. See *Buonincontro v. Kloppenborg* (1978), 61 Ill. App. 3d 1041, 1043.

■ The Department argues that if we adopt plaintiffs' interpretation of section 23, the cause must be remanded for a determination of each plaintiff's actual losses. The record demonstrates that Robert C. Reda was the remitter of a cashier's check in the amount of $37,500 payable to defendant. The record is unclear as to the size of Robert S. Reda's contribution to that total investment of $37,500. The Department argues that the cause should be remanded to determine the exact amount of Robert S. Reda's contribution to the investment, and if the trial court finds that Robert S. contributed less than $10,000, then it should reduce his award accordingly.

The Department did not raise this issue in the trial court. It is well settled that an argument which was not raised in the trial court cannot be urged on appeal. (*Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387.) The issues in the trial court were identical to those present in this appeal, and the Department should have advanced this alternative argument in the trial court as well. It may not raise this issue as an afterthought for the first time on appeal.

The Department's final contention is that the trial court erred in its calculation of costs and attorney fees. The trial court ordered an award of attorney fees equal to 15% of the amount recovered from the Fund plus $458.65 for court costs. The Department claims that section 23 states that the sum of costs and attorney fees must total no more than 15% of the amount recovered from the Fund.

The Department has waived this issue as well. When a decision contains a specific finding adverse to an appellee, the appellee must file a cross-appeal raising as an issue that adverse finding. (*Burrgess v. Industrial Comm'n* (1988), 169 Ill. App. 3d 670, 677.) If the Department was of the opinion that the trial court incorrectly calculated the appropriate amount of costs and attorney fees, then it should have appealed from that portion of the order. By failing to preserve properly this issue for review by filing a cross-appeal, the Department has waived this issue.

We hold that each plaintiff is entitled to a payment from the Fund in the amount of $10,000 plus $1,500 for attorney fees. Plain-

tiffs are also entitled to a payment from the Fund totaling $458.65 for court costs.

Accordingly, the judgment of the circuit court of Lake County is reversed, and judgment is entered for plaintiffs in the amount of $23,458.65 pursuant to Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5).

Reversed.

QUETSCH and DOYLE, JJ., concur.