HENRY W. VON MEETEREN *et al.*, Plaintiffs-Appellees, v. SELL-SOLD, LTD., d/b/a Re/Max Intown, *et al.*, Defendants (The Department of Professional Regulation, Intervenor-Appellant).

First District (3rd Division)   No. 1—94—2359

Opinion filed August 16, 1995.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and William K. Blanchard, Assistant Attorney General, of counsel), for appellant.

Rieck & Crotty, P.C., of Chicago (Jerome F. Crotty, Douglas Conover, and Robert A. McMahon, of counsel), for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Henry Von Meeteren and Janet Von Meeteren (plaintiffs) entered into an agreement with Sell-Sold, Ltd., and its agent, Carole Giovingo (collectively, Sell-Sold), engaging Sell-Sold as their exclusive agent for the sale of real property owned by plaintiffs. Sell-Sold breached the listing agreement (Agreement) by failing to account for earnest money it received and held in escrow. After failing to satisfy a default judgment against Sell-Sold, plaintiffs successfully petitioned for relief under sections 23 and 25 of the Real Estate License Act of 1983 (the Act) (225 ILCS 455/23, 455/25 (West 1992)). The trial court awarded plaintiffs $21,596.39 pursuant to rights provided by the Act.

Specifically, the Illinois Department of Professional Regulation (the Department) argues the trial court's award was in error since it exceeded the amount allowable under the Act, because the award includes: (1) the defendants' commission of $9,834; (2) interest on the underlying judgment; (3) costs and attorney fees above the amount established by the Act; and it (4) ignores the Act's provision for a maximum recovery of $10,000 for each fraudulent transaction.

We agree that the award to plaintiffs exceeded the amount allowed by the Act and reverse the trial court's order.

■ Section 23 of the Real Estate License Act of 1983 provides in relevant part:

> "The Department shall establish and maintain a Real Estate Recovery Fund [Fund] from which any person aggrieved by an act, representation, transaction or conduct of a duly licensed broker *** which constitutes embezzlement of money or property or results in money or property being unlawfully obtained from any person by false pretenses, artifice, trickery or forgery or by reason of any fraud, misrepresentation, discrimination or deceit *** and which results in a loss of actual cash money as opposed to losses in market value, may recover. Such aggrieved person may recover, by order of the circuit court of the county where the violation occurred, an amount of not more than $10,000 from such fund for damages sustained by the act, representation, transaction, or conduct, together with costs of suit and attorney's fees incurred in connection therewith of not to exceed 15% of the amount of the recovery ordered paid from the Fund. However, no licensed broker, or salesperson may recover from the Fund unless the court finds that the person suffered a loss resulting from intentional misconduct. Such court order shall not include interest on the judgment.

The maximum liability against the Fund arising out of any one act shall be as provided in this Section and the judgment order shall spread the award equitably among all co-owners or otherwise aggrieved persons, if any. The maximum liability against the Fund arising out of the activities of any single broker *** shall be $50,000." 225 ILCS 455/23 (West 1992).

Section 25 of the Act details the procedure by which section 23 relief is afforded, requiring plaintiffs to (1) obtain a valid judgment against a broker, and (2) exhaust all means of enforcing the judgment against such defendant prior to petitioning for relief from the Fund. 225 ILCS 455/25 (West 1992).

Plaintiffs entered into the Agreement with Sell-Sold to list and sell real property owned by plaintiffs. Sell-Sold found a buyer, who deposited $16,390 in earnest money with Sell-Sold. Sell-Sold retained the money and failed to refund the balance at closing after deducting its commission as provided for in the Agreement.

Plaintiffs sued Sell-Sold and obtained two default judgments against it in the amount of $18,556.88, but were unable to enforce either judgment against Sell-Sold, and thereafter petitioned for relief from the Fund.

On April 5, 1994, the trial court ordered the Department to pay plaintiffs the sum of $21,596.39 out of the Fund. The $21,596.39 represented the judgment, plus $2,816.91 in attorney fees, and $223.50 in additional costs. The Department failed to file or appear at this proceeding.

When the facts are undisputed and the decision rests on the proper interpretation of a statute, the appellate court reviews the trial court's ruling as a matter of law. (*Kaszubowski v. Board of Education* (1993), 248 Ill. App. 3d 451, 618 N.E.2d 609.) Questions of law are determined *de novo*, giving no deference to the trial court's decision. *S.B. Lexington, Inc. v. Near North Insurance Agency, Inc.* (1993), 244 Ill. App. 3d 1023, 614 N.E.2d 234.

Plaintiffs contend that our review is not simply *de novo*, as "the trial court's decision to deny the Department's motion to vacate is discretionary, and should not be reversed on appeal unless the trial court abused its discretion." However, it is well established that our construction of a statute is *de novo*.

■ The Department argues first that the trial court's inclusion of Sell-Sold's commission of $9,834 was erroneous, since the commission does not represent an actual pecuniary loss as required by the Act. Section 23 states that parties may recover for a "loss of actual cash money as opposed to losses in market value." (225 ILCS 455/23 (West 1992).) "Cash money" is not further defined in the Act or existing

case law. The issue is, then, whether plaintiffs lost actual cash money by virtue of Sell-Sold's retaining its agreed-upon commission of $9,834, which represented 6% of the property's purchase price.

Both sides urge this court to apply the "clear and unambiguous language of the Act," yet, not surprisingly, each side interprets this language differently. The Department equates "actual cash money" with "out-of-pocket loss," arguing that the commission is not an out-of-pocket loss because the plaintiffs were obligated to pay Sell-Sold's commission pursuant to the listing agreement. Plaintiffs argue that the commission represented a loss of actual cash money simply because it was money retained by Sell-Sold having nothing to do with market value.

Both sides miss the real issue, which is whether Sell-Sold was legally entitled to the commission. If Sell-Sold was entitled to its commission, having found a willing buyer at a purchase price plaintiffs agreed to accept, then plaintiffs cannot say they "lost" money. If, however, Sell-Sold breached its duty under the Agreement to find a buyer, then plaintiffs would have no duty to pay the commission, and Sell-Sold's retention of it would be unlawful, resulting in a loss to plaintiffs of actual cash money.

The record indicates that Sell-Sold, despite other conduct that breached the Agreement, did list the property and found a suitable buyer whose bid was accepted. Having performed under the provision related to its commission, and plaintiffs' having received the benefit of Sell-Sold's performance, Sell-Sold is entitled to its commission under the Agreement.

Moreover, count I of plaintiffs' original complaint, paragraph 13, provides: "[Sell-Sold] should have been present at the closing of the sale to deliver to plaintiffs the balance of the earnest money, being $6,556, *after deducting from the earnest money the commission as set forth in the listing Agreement*." (Emphasis added.) In count II of their complaint, plaintiffs seek the amount of the commission as punitive damages based on Sell-Sold's failure to place the earnest money in a separate escrow account. The Act clearly does not authorize punitive damages, and the trial court's award of such damages was erroneous. See *Buonincontro v. Kloppenborg*, 61 Ill. App. 3d 1041, 1043, 378 N.E.2d 635 ("It is the obvious purpose and intent of the legislature to allow a defrauded person a limited recovery from the fund, not as an alternative to recovery from other sources but as a remedy of last resort to be pursued when all other sources of collection have been exhausted").

Actually, an award of punitive damages fails to recognize that the "party" being punished is the Department as the Fund's administrator, and not Sell-Sold, the breaching party.

Since the trial court's award of the commission as punitive damages was error, and Sell-Sold "earned" or was legally entitled to its commission by virtue of its performance, the trial court erred by including the amount of the commission in its award.

■ The Department next argues that the trial court erred in including 5% interest on the amount of earnest money awarded in the default judgment, accruing from the time that money was deposited with Sell-Sold until the judgment was entered. The Act provides: "Such court order shall not include interest on the judgment." (225 ILCS 455/23 (West 1992).) Plaintiffs concede that the Act does not allow interest "on the judgment" but argue, without citation, that the prohibition does not apply to prejudgment interest.

In cases involving a breach of fiduciary duty, the rationale behind an award of prejudgment interest is to make the injured party whole by forcing the fiduciary to account for profits gained from his use of the injured party's funds. (*Progressive Land Developers, Inc. v. Exchange National Bank* (1994), 266 Ill. App. 3d 934, 641 N.E.2d 608.) This rationale does not seem appropriate in light of the Act's purpose. The Fund was not intended to be fully compensatory, but rather to provide only limited recoveries. (*Daly v. Three Star Enterprises, Inc.* (1982), 110 Ill. App. 3d 386, 442 N.E.2d 620.) The Act constitutes a substantial departure from the common law and is to be strictly construed. *Buonincontro v. Kloppenborg*, 61 Ill. App. 3d at 1043.

Moreover, the Act limits recovery to "actual cash money as opposed to losses in market value." (225 ILCS 455/23 (West 1992).) Interest is a market variable, and its loss is, therefore, noncompensable.

The trial court's award of 5% interest, presumably pursuant to the Interest Act, which provides that prejudgment interest may be awarded where the amount due is fixed and ascertainable (815 ILCS 205/2 (West 1992)), was improper.

■ The Department's third argument alleges the trial court's award included attorney fees and costs in excess of the 15% limitation contained in the Act. The Act provides that the aggrieved party may be awarded a recovery "together with costs of suit and attorneys' fees incurred in connection therewith of not to exceed 15% of the amount of recovery ordered paid from the Fund." (225 ILCS 455/23 (West 1992).) The 15% limit is calculated from the actual damage award from the Fund, which should be based on the actual pecuniary loss incurred and not on the underlying judgment entered by the trial court. (*Daly*, 110 Ill. App. 3d at 388.) Since we have already determined that plaintiffs' actual pecuniary loss does not include the

amounts of Sell-Sold's commission and prejudgment interest, the trial court's award based on the judgment amount of $21,596.39 is in error. Instead, the award should be based on the amount of $6,556, representing the actual pecuniary loss of the earnest money misappropriated by Sell-Sold. Further, the sum of costs and attorney fees awarded must total no more than 15% of the amount recovered from the Fund.

■ The Department's final argument is that no matter how many claimants, only a maximum of $10,000 may be recovered from the Fund for each fraudulent transaction. Because the trial court's award should not have included the amounts of the commission or prejudgment interest, the correct award to plaintiffs is limited to the value of the earnest money lost, $6,556, plus costs and attorney fees not to exceed 15% of that amount, or a maximum of $983.40. Since the appropriate award will necessarily be below $10,000, we need not decide the issue of whether section 23 of the Act limits recovery to $10,000 for each fraudulent transaction.

However, we agree with the Department's reading of the Act as establishing a $10,000 recovery limit for each fraudulent transaction, regardless of the number of persons aggrieved by the fraudulent act or transaction. The only precedent which directly addresses this question is *Reda v. Otero* (1993), 251 Ill. App. 3d 666, 670, 622 N.E.2d 825, where the second district held "that the maximum liability against the Fund arising out of a single transaction with a real estate broker is $50,000." In arriving at this holding, the court found it necessary to determine whether the language "as provided in this Section" refers to the $10,000 limitation contained in the first paragraph of section 23 or the $50,000 limitation contained in the section's second paragraph. (*Reda*, 251 Ill. App. 3d at 669.) The *Reda* court determined that "as provided in this Section" referred to the latter $50,000 limitation. We would arrive at an opposite conclusion, finding that the language refers to the $10,000 limitation.

Section 23, in its first paragraph, provides: "Such aggrieved person may recover *** an amount of not more than $10,000 from such fund for damages sustained by the act, representation, transaction, or conduct ***" (225 ILCS 455/23 (West 1992).) When the General Assembly enacted the Act in 1973, the second paragraph provided: "The maximum liability against the Fund arising out of any one act shall be as provided in this Section and the judgment order shall spread the award equitably among all co-owners or otherwise aggrieved persons, if any." (Ill. Rev. Stat. 1973, ch. 114½, par. 108.1 (now codified, as amended, at 225 ILCS 455/23 (West 1992)).) No limitation as to the amount charged against a single bro-

ker was included and at the time of enactment one of the Act's sponsors observed that the limitation provision in what is now section 23 "also provides that the maximum liability *** is $10,000. That is that only $10,000 can be recovered from the recovery fund from one incident so that if two contract purchases [*sic*] *** each of whom lost $10,000, they would have to share *** in the $10,000 recovery." (78th Ill. Gen. Assem., House Proceedings, June 30, 1973, at 39 (statements of Representative Walsh).) In 1975 the General Assembly amended the Act by adding to the second paragraph: "The maximum liability against the Fund arising out of the activities of any single broker *** shall be $50,000." Pub. Act 79—749, eff. October 1, 1975 (amending Ill. Rev. Stat. 1973, ch. 114$^1$/$_2$, par. 108.1 (now codified, as amended, at 225 ILCS 455/23 (West 1992)).)

The cardinal rule of statutory construction is to ascertain and give effect to the intent and meaning of the legislature. (*Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 630 N.E.2d 820.) If we were to accept the construction offered by the *Reda* court, the language set out in 1973 would be construed to only apply to an amendment to the Act adopted in 1975. Further, we would be forced to ignore section 23's express language. The first paragraph of section 23 provides: "Such aggrieved person may recover *** an amount of not more than $10,000." The second paragraph begins: "The maximum liability against the Fund *arising out of the activities of any single broker* *** shall be $50,000." (Emphasis added.) (225 ILCS 455/23 (West 1992).) The $10,000 limitation is transactional in nature, "arising out of any one act," while the $50,000 limitation applies on a per person or broker basis, "arising out of the activities of any single broker." The more appropriate interpretation, therefore, is to read the $50,000 limitation as applying where a single broker engages in multiple fraudulent acts or transactions, or "activities," which, because of the multitude of potential plaintiffs seeking relief from the Fund, would draw from the Fund at a rate soon to cause its depletion.

For the reasons set forth above, we reverse the order of the trial court, and enter judgment for plaintiffs pursuant to Supreme Court Rule 366(a)(5) in the amount of $7,539.40. 134 Ill. 2d R. 366(a)(5).

Reversed.

RIZZI and CERDA, JJ., concur.