No. 2--03--0413

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE 
ex rel.
 MICHAEL J.      ) Appeal from the Circuit Court

WALLER and 
JAMES E. RYAN,      ) of Lake County.

      )

Plaintiff-Appellee,      )

      )

v.      ) No. 01--CH--894

      )

J. HARRISON, as Trustee under Trust          ) Honorable

No. 410,                                                              ) David M. Hall, Margaret J. Mullen,

                                                               ) and Barbara Gilleran Johnson,

Defendant-Appellant.        ) Judges, Presiding.

______________________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

The State, represented by Lake County State's Attorney Michael J. Waller and then Attorney General James E. Ryan, filed a complaint against defendant, J. Harrison, as trustee under trust No. 410, alleging that he violated various provisions of the Illinois Environmental Protection Act (the Act) (415 ILCS 5/5 
et seq.
 (West 2000)) and the administrative regulations of the Pollution Control Board (35 Ill. Adm. Code §§807, 810, 848 (2000)).  After several attempts at personal service failed, the State sought and received the court's permission to serve defendant by publication.  Defendant did not appear and the court entered a default judgment.  Defendant then appeared and moved to vacate the judgment.  The court denied the motion.  Defendant appeals, contending that the State did not comply with the requirements for alternative service by special order of the court or for service by publication because the affidavit accompanying the motion was insufficient.  Defendant also contends that service by publication is available only in 
in rem
 actions while the fine that the court imposed is a personal judgment against him.  Because the
 
trial court's determination that the State complied with the requirements for service by special order of the court was not clearly erroneous, we affirm.

The State's complaint alleged that defendant, as trustee, owned property at 38101 N. Sheridan Road in Beach Park.  The property, which appeared to be abandoned, contained tires, drums of petroleum products, and other waste in violation of the Act and regulations promulgated under it.

The State made several attempts to serve defendant personally or by abode service.  The original summons, directed to an address in Mundelein, was returned unserved.  An alias summons directed to an address in Tower Lakes was similarly returned unserved.  A third alias summons directed to defendant at the Lake County courthouse also was not served.  An attempt to serve defendant at an address in Cedar Grove, Wisconsin, was also unsuccessful.

The State then filed a motion for an order authorizing alternative service.  The motion does not state specifically which section of the Code of Civil Procedure (the Code) (735 ILCS 5/1--101 
et seq.
 (West 2000)) it invokes.  The motion alleges that "The Plaintiff has made diligent inquiry as to the location of the Defendant, and reasonable efforts to make service have been unsuccessful."

Attached to the motion was the affidavit of Assistant State's Attorney Lisle Stalter, which alleged the following.  Stalter reviewed records in the Lake County recorder's office to learn who purchased the property.  This information provided her with a post office box in Mundelein, which she traced to a street address.  A Lake County sheriff's deputy attempted to serve defendant at that address, but returned the summons unserved.  A colleague then gave Stalter an address for defendant in Cedar Grove, Wisconsin.  However, an attempt at service at that address was returned unserved.  She found another address in Tower Lakes/Barrington at which to serve defendant.  However, the summons was returned unserved as no such address existed.  Stalter averred that, "Although a diligent effort has been made, no other information has been found as to where J. Harrison can be personally served."

The trial court issued an order stating that "Plaintiff's Motion for service by publication is granted as Plaintiff has shown due diligence in attempting to obtain personal service."  The court also ordered that defendant be served by regular mail.  Later, Stalter filed a second affidavit that was essentially the same as the first, but included the specific addresses at which service was attempted.  The State provided publication notice and also mailed copies of the complaint to the addresses at which it had attempted service.  Only the envelope sent to the Tower Lakes address was returned.

Defendant did not appear and the trial court entered a default judgment.  It enjoined defendant from future violations of the Act, ordered him to clean up the site, and fined him $79,000.  Defendant then appeared and moved to quash the service and vacate the judgment.  The trial court denied the motion and defendant timely appeals.

The parties assert that the standard of review of whether the trial court had personal jurisdiction over defendant is 
de novo
.  Although numerous recent cases contain this statement of the standard of review (see, 
e.g.
, 
White v. Ratcliffe
, 285 Ill. App. 3d 758, 764 (1996)), it is not necessarily correct.  Rather, as in other cases, the appropriate standard depends on how the trial court decided the issue.  We note that 
White
 cites 
State Bank v. Thill
, 113 Ill. 2d 294, 308-09 (1986), for the proposition that whether the trial court obtained personal jurisdiction over the defendant should be reviewed 
de novo
.
  Although 
Thill
 does not explicitly state a standard of review, the issue there was a legal one, so 
de novo
 review was appropriate.  However, 
Thill
 does not state a general rule that anytime personal jurisdiction is at issue, the standard of review is 
de novo
.

In 
Gaidar v. Tippecanoe Distribution Service, Inc.
, 299 Ill. App. 3d 1034 (1998), the court held that the "manifest weight of the evidence" standard of review applied to jurisdictional issues where the trial court heard courtroom testimony, but that a 
de novo
 standard applied when the trial court heard no testimony but decided the jurisdictional issue solely on the basis of documentary evidence.  
Gaidar
, 299 Ill. App. 3d at 1039-40; see also 
Spartan Motors, Inc. v. Lube Power, Inc.
, 337 Ill. App. 3d 556, 559-60 (2003).  We agree with this analysis to a point.  Although in 
Gaidar
 and 
Spartan Motors
 the issue was whether the defendants were doing business in Illinois for purposes of the long-arm jurisdiction statute (735 ILCS 5/2–209 (West 2000)) rather than whether the defendants were properly served with the summons, this distinction is irrelevant.  The critical fact is whether the trial court heard disputed evidence and made factual findings, rather than the substantive issue that the court considered. Here, the court made such findings, and the issue was a mixed question of law and fact.  Therefore, we apply the clearly erroneous standard of review.

"This court reviews pure questions of law under a 
de novo
 standard of review, without  deference to the circuit court concerning the content of any rule of law relevant to this proceeding. [Citation.]  The circuit court's finding of  fact, however, is entitled to deference by this court and may be reversed only if it is contrary to the manifest weight of the evidence. [Citation.]  Mixed questions of fact and law, which involve the application of law to a particular set of facts, are subject to review under the clearly erroneous standard, affording the circuit court less deference than for questions of fact. [Citation.]  Under the clearly erroneous standard of review, a finding
 
by the trial court may be reversed only if, after careful examination of the record in light of the applicable rule of law, the reviewing court is left with the 'definite and firm conviction' that the finding is in error. [Citation.]"  
Zebra Technologies Corp. v. Topinka
, 344 Ill. App. 3d 474, 480-81 (2003).

Defendant first claims that the trial court did not acquire jurisdiction over him because the State did not comply with the statute authorizing substituted service.  If a party is not properly served with a summons, the court has no personal jurisdiction over him or her and any judgment entered against that party is void.  
Mugavero v. Kenzler
, 317 Ill. App. 3d 162, 164 (2000).

Generally, the Code requires that an individual defendant be served either in person or by abode service--by leaving a copy of the summons with a family member above the age of 13.  735 ILCS 5/2--203(a)(1), (a)(2) (West 2000).  However, section 2--203.1 of the Code provides that if service upon an individual defendant is impractical, a plaintiff may request that the court allow "a comparable method of service."  735 ILCS 5/2--203.1 (West 2000).  The motion must be accompanied by an affidavit

"stating the nature and extent of the investigation made to determine the whereabouts of the defendant and the reasons why service is impractical under items (1) and (2) of subsection (a) of Section 2--203, including a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful."  735 ILCS 5/2--203.1 (West 2000).

Defendant complains that Stalter's affidavit attached to the motion was insufficient because it did not state "the reasons why service [was] impractical" pursuant to section 2--203 or "a specific statement showing that a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful."  We disagree.

While a party requesting an alternative means of service must strictly comply with section 2--203.1, its requirements for the affidavit are not magic words that must be slavishly copied before alternative service will be permitted.  Here, although Stalter's affidavit did not state that "service under section 2--203 is impractical because ***," it is clear from the affidavit as a whole that service was impractical because defendant could not be found.  Stalter described her efforts to find defendant, which led to attempted service at three different home addresses as well as the county courthouse.  The trial court could clearly infer from this that defendant could not be located and, therefore, personal or substituted service was impractical.

Moreover, Stalter's affidavit specifically states, "Although a diligent effort has been made, no other information has been found as to where J. Harrison can be personally served."  This is substantially similar to the required statement that "a diligent inquiry as to the location of the individual defendant was made and reasonable efforts to make service have been unsuccessful" (735 ILCS 5/2--203.1 (West 2000)).  We will not hold the affidavit insufficient because it did not track the statutory language precisely.

Defendant contends that the affidavit does not demonstrate that the State was in fact diligent in attempting to personally serve him.  He complains that the simple failure to serve defendant at two "viable" addresses and one nonexistent one was insufficient.  Again, we disagree.

Stalter's affidavit describes efforts to find defendant at three addresses. Stalter averred that she checked the records in the Lake County recorder's office to find out who purchased the Beach Park property.  This effort provided her with a post office box, which she in turn traced to a street address in Mundelein.  However, a summons directed to that address was returned unserved.

We note that the return of service states that Barbara Shissle claimed to live alone at that address and that a car in the driveway was registered to her.  In other words, defendant simply did not live at that address.  He does not explain why further attempts to serve him there would have been more successful than the first.

The affidavit further states that Stalter obtained from a colleague an address in Cedar Grove, Wisconsin.  A summons was issued for that address but it, too, was returned unserved.  Stalter then discovered another possible address for defendant in Barrington/Tower Lakes.  The Lake County sheriff's department tried four times to serve defendant there but could not locate the address.  Nothing in the record suggests that the State was not diligent in attempting personal service.

Interestingly, while defendant criticizes the State's efforts to find him, he does not argue that he 
could
 have been found with a diligent inquiry.  In the analogous situation of a motion for service by publication under section 2--206 of the Code (735 ILCS 5/2--206 (West 2000)), courts require a defendant challenging service to file a counteraffidavit stating that upon reasonable inquiry he or she could have been found.  The plaintiff must then produce evidence showing that it conducted a due inquiry.  See 
First Bank & Trust Co. of O'Fallon v. King
, 311 Ill. App. 3d 1053 (2000).  Here, defendant's motion to quash did not suggest how he could have been found.

Mugavero
, on which defendant principally relies, is easily distinguishable.  There, the plaintiff's motion did not include any affidavit at all.  To the extent that the court could rely on a previously filed affidavit, it showed that plaintiff conducted virtually 
no
 inquiry to learn the defendant's whereabouts.  
Mugavero
, 317 Ill. App. 3d at 165.

In 
In re Marriage of Schmitt
, 321 Ill. App. 3d 360 (2001), an affidavit showed that two detective agencies had been unable to serve the respondent, despite 11 attempts at his businesses, a bar, and the courthouse.  The 
Schmitt
 court found that these efforts demonstrated due diligence.  
Schmitt
, 321 Ill. App. 3d at 369.  However, the court did not hold that such extraordinary efforts are always required.

Diligence must depend on the facts of the specific case.  In particular, whether a party has been diligent does not depend upon the sheer number of attempts at service.  Here, the State showed that it had exhausted all of its leads in its attempt to locate defendant.  As noted, defendant does not suggest any additional steps the State could have taken.  We are convinced that the statute does not require futile attempts to serve a defendant at an address where he does not live or at an address that does not exist.  The State adequately demonstrated its diligence in attempting to serve defendant personally.  Because of our resolution of this issue, we need not consider whether the State complied with the requirements of section 2--206 for service by publication or whether such service is available only in 
in rem
 actions.

The dissent raises several points that deserve comment. First, the State presented evidence to the trial court below that the trial court accepted as sufficient to obtain service by publication. On appeal it is not the State but defendant who must establish that the trial court's determination is clearly erroneous. We do not believe that defendant has sustained his burden. Second, although the dissent sets forth alternate means of obtaining knowledge about the whereabouts of defendant, these alternate means are immaterial because defendant failed to establish that had they been attempted his whereabouts would have been made known. Third, the dissent sets forth the possible existence of certain facts that are neither in the record nor necessarily subject to judicial notice.  See slip op. at 10 ("The business may have had organizational documents on file with the Secretary
 
of State's office.").  Assuming, 
arguendo
,
 that this was error, neither defendant nor the dissent establishes prejudice relative to the failure to review the Secretary of State's records. The dissent sets forth alternate or additional means to locate the whereabouts of any defendant in similar circumstances. We accept that there are viable alternatives, as cited by the dissent, which a trial court may consider in future cases wherein similar relief is sought.  However, in this case, we are not swayed by the dissent's ultimate claim that the trial court's judgment is clearly erroneous and that defendant has established prejudicial error.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

GROMETER, J., concurs.

JUSTICE KAPALA, dissenting:

I respectfully dissent because I do not believe that the State established that conventional service was impractical, nor do I believe that the publication by the State was comparable to service under section 2--203.  I would reverse, vacate the default judgment, and remand this cause for further proceedings.

A motion under section 2--203.1 must be accompanied by an affidavit which demonstrates why service under section 2--203 is impractical.  This affidavit must include a specific statement showing that (1) a "diligent inquiry" as to the location of the individual defendant was made and (2)  "reasonable efforts" to make service have been unsuccessful.  735 ILCS 5/2--203.1 (West 2000).  In my judgment, the State fails in both respects.  

The original summons was directed to defendant at 566 Lomond Drive, Mundelein, Illinois.  It was issued on June 21, 2001, and returned not found on June 29, 2001, by the Lake County sheriff, who noted that someone else was living at that address.  A first alias summons was issued to defendant at 25313 W. Lake Shore Drive, Barrington/Tower Lakes, Illinois, on August 2, 2001, and returned not found on August 23, 2001, after four unsuccessful attempts to establish whether the address existed.  A second alias summons, directed to the Lake County courthouse, was issued but subsequently expired without being served.  Through undisclosed means, the State obtained a Wisconsin address for defendant.  However, according to Assistant State's Attorney Stalter's affidavit, defendant was not served in Wisconsin.  There is no sheriff's return from Wisconsin in the record, so we do not know if the process was not served in Wisconsin due to lack of time, lack of personnel, deficiencies in the request, or some other reason.  The total of Stalter's efforts to locate an address for defendant was limited to checking property and tax records and obtaining information about the Wisconsin address from a "colleague."  No search of motor vehicle registration records was made.  As far as we know, neither the person living in the house nor the neighbors of the Mundelein property were questioned as to defendant's whereabouts.  Even though a letter addressed to the Barrington/Tower Lakes address came back with the notation "Forwarding Time Expired," no request was made of the post office for a current address.  No one checked any databases for a telephone listing, city directory, or utility service.  No one requested or authorized an investigative service to take steps to trace defendant.

The record discloses other leads that the State did not follow.  The property in question was an amusement business with a go-cart track and batting cages.  This we may easily infer from the record, which includes Lake County health department site inspections complete with color photographs of the signs at the entrance to the go-cart track.  Consequently, the business may have had organizational documents on file with the Secretary of State's office.  The business may have been registered with the Illinois Department of Revenue or the Department of Employment Security.  The business may have had an assumed name certificate on file with the Lake County clerk's office.  The business may have obtained an operating license from the Village of Beach Park, where the business was located.  Yet no one checked with any of these governmental entities to uncover information as to the whereabouts of defendant.  While the State apparently had some information that defendant might attend a court date in Lake County, and the second alias summons was directed to the Lake County courthouse, we do not know how the State came into possession of that information.  The record does not reflect that the State searched the circuit clerk's records for any prior or pending legal proceedings.  No one attempted to locate business associates of defendant or former employees of the business.

The periodic site inspections of the property by the Lake County health department show ongoing activity at the site.  Grass was mowed.  Refuse was still being dumped.  There was a trailer moved onto the property, with a Missouri license plate affixed to it.  No one tried to determine who owned the trailer through tracing the license plate.  Surveillance of the property would have yielded the culprit who was doing the dumping or the Samaritan who was doing the mowing or, at the least, a license plate number of a vehicle or vehicles going into and out of the property.  It is important to underscore that the State commanded the investigative resources of the Lake County State's Attorney's office, the Lake County sheriff's department, and the Illinois Attorney General's office.

For these reasons, I disagree with the majority's conclusion that the State conducted a diligent inquiry.  To the contrary, its inquiry was superficial and, under these circumstances, its efforts to effect service were not reasonable.  I believe that Stalter's affidavits in support of her invocation of section 2--203.1 actually aver nothing more than what was stated in the affidavit in 
Mugavero v. Kenzler
, 317 Ill. App. 3d 162, 165 (2000), merely that defendant moved from the address on the summons.  That is the only information imparted by her two affidavits.  In Mugavero, this court refused to allow court-ordered service on the basis of such a representation.  
Mugavero
, 317 Ill. App. 3d at 165-66.   The majority's holding in this case, that personal service was impractical because defendant was not found, eviscerates the requirement of diligence in trying to find him.  I believe this sets a wrong precedent.

Moreover, the majority's opinion applies the wrong standard of review.  
 Here, the trial court heard no disputed evidence and made no findings of fact.  The State presented an affidavit that was not challenged at the time the trial court entered the order allowing special service under section 2--203.1.  
Generally, the manifest weight of the evidence standard of review applies if the trial court heard courtroom testimony, but a 
de novo
 standard applies when the trial court heard no testimony and ruled solely on the basis of documentary evidence.  
Rosenthal-Collins Group, L.P. v. Reiff
, 321 Ill. App. 3d 683, 687 (2001).  When the trial court rules on the legal sufficiency of an affidavit, we review 
de novo
 the trial court's ruling (
Jackson v. Graham
, 323 Ill. App. 3d 766, 774 (2001)), giving no deference to the trial court's decision.  See 
Von Meeteren v. Sell-Sold, Ltd.
, 274 Ill. App. 3d 993, 996 (1995).  The majority cites 
Zebra Technologies Corp. v. Topinka
, 344 Ill. App. 3d 474 (2003), in support of its position that the clearly erroneous standard applies to our facts.  However, in 
Zebra
 the trial court took three days of testimony in a bench trial, in which it weighed the credibility of the witnesses and made findings of fact based upon the evidence it heard.  
Zebra
, 344 Ill. App. 3d at 481-83.  In our case, no one disputed the efforts the State made to locate defendant or the averments in the State's affidavit.  Indeed, taking everything the State says it did as true, these efforts are insufficient to meet the requirements for special court-ordered service.  I 
believe the correct standard of review is 
de novo
.

Furthermore, I disagree that defendant has the burden to show that upon reasonable inquiry  he could have been found.  
First Bank & Trust Co. of Fallon v. King
, 311 Ill. App. 3d 1053 (2000), upon which the majority relies for this proposition, is a Fifth District Appellate Court case that cites no authority for the rule it announced, and we should decline to follow it.  Notwithstanding, the majority has misapplied 
King
.  
King
 shifted the burden to the defendant only "[o]nce the Bank filed the affidavit pursuant to the language used in the statute."  
King
, 311 Ill. App. 3d at 1057.  As demonstrated in my discussion above, the State's affidavit in support of the motion for service by publication did not meet the substantive requirements of section 2--203.1.  Consequently, I believe the majority errs in applying 
King
.

Significantly, this court considered the sufficiency of the affidavits required by section 2--203.1 in 
Mugavero
 and 
In re Marriage of Schmitt
, 321 Ill. App. 3d 360 (2001), and we did not shift the burden to the defendant in either of those cases.  In 
Mugavero
, we reversed the trial court's ruling that service was made under section 2--203.1 based solely upon our 
de novo
 determination that the plaintiff's affidavit was insufficient.  
Mugavero
, 317 Ill. App. 3d at 164-65.  We upheld the plaintiff's affidavit in 
Schmitt
 without first requiring the defendant to demonstrate that upon reasonable inquiry he could have been found.  
Schmitt
, 321 Ill. App. 3d 360.  I believe that our approach in the instant case departs from sound precedents we have already established.

Section 2--203.1 requires that the court-ordered method of service  be comparable to personal or abode service.  735 ILCS 5/2--203.1 (West 2000).  I do not believe that publication, coupled with mailing, as here, is comparable service unless the plaintiff can show that absolutely no other method is available under the circumstances.  Although defendant challenged the method of service, the majority does not address this issue.  The purpose of service is to give notice to those whose rights or immunities are about to be affected by the proposed action.  
Zilinger v. Allied American Insurance Co.
, 957 F. Supp. 148, 150 (N.D. Ill. 1997).  Under Illinois law, every defendant in an action filed against him is entitled to the best possible notice of the pending suit.  
Fleet Mortgage Corp. v. Bryant
, No. 88 C 1684 (N.D. Ill. 1988) (Memorandum Op.).  Service by publication is a " 'concession of the law to hard circumstances of necessity' " (
Fleet
, slip op. at 1, quoting 
Graham v. O'Connor
, 350 Ill. 36, 40 (1932)), " 'and the law makes this concession grudgingly' " (
Fleet
, slip op. at 1, quoting 
Empire of America v. Brown
, No. 85 C 05067, slip op. at 1 (N.D. Ill. February 26, 1986)).  The concession should not be made, and publication should not stand in the stead of personal service, where there are alternative methods.  Had the State been diligent in its inquiry, it might have located an employee, an employer, a relative, an attorney, a friend, or a neighbor upon whom service could have been made in the event defendant's whereabouts remained unknown.  I read our decision in
 Schmitt
 as preferring that service be made on someone who has a relationship with the defendant, and who is reasonably likely to advise the defendant of the service if that method is at all possible.  I believe that section 2--203.1 should be used only in extraordinary circumstances such as those that existed in 
Schimitt
, where the defendant was consciously evading service.  
Schmitt
, 321 Ill. App. 3d at 362.   Otherwise, mere difficulty, rather than impracticality, in effecting personal service will allow court-ordered service under section 2--203.1.  Here, there was evidence that defendant, as trustee, owned the subject property.  There was evidence of activity at the property.  Publication with a mailing to defendant should have been augmented with posting by affixing the summons and complaint to the property, coupled with personal service or mailings to the associates of defendant.  In my opinion, these measures would have been far more likely to notify defendant of the pending procedures than a mailing to defendant with publication in the Pioneer Press.  I believe that the majority's opinion weakens the safeguards that the legislature intended to put in place when it enacted section 2--203.1.