FIRST BANK AND TRUST COMPANY OF O'FALLON, Plaintiff-Appellee, v. JANET KING, Defendant-Appellant.

Fifth District   No. 5—99—0182

Opinion filed March 17, 2000.

Thomas Benedick, of O'Fallon, for appellant.

Chadwick A. Kasten, of O'Fallon, for appellee.

JUSTICE MAAG delivered the opinion of the court:

This action arose out of the circuit court's February 9, 1999, order granting summary judgment in favor of First Bank & Trust Company of O'Fallon, Illinois (Bank), plaintiff-appellee, against Janet King, defendant-appellant. In that same order, the circuit court denied King's motion to clarify the circuit court's November 24, 1998, order.

The relevant facts are as follows. King was the owner of real estate located in St. Clair County. The Bank held a mortgage on that same property. On September 5, 1997, the Bank filed a complaint for fore-

closure against King, John Zajicek, who paid the 1995 real estate taxes, Diane S. Baker, holder of a second mortgage for an undisclosed amount, and other unknown owners and nonrecord claimants. On that same date, the Bank filed an affidavit for publication stating that it had made a due and diligent inquiry to find King but that she could not be located for service of summons. The Bank filed a certificate of publication that stated that the "Notice of Publication of Notice of Foreclosure" was published in the Legal Reporter in St. Clair County for three consecutive weeks, the first notice being published on September 17, 1997, and the last publication being published on October 1, 1997. King failed to enter an appearance. On November 19, 1997, the circuit court entered a judgment of foreclosure and sale. Jurisdiction was premised on defendants being served by publication with a notice in The Legal Reporter, a public and secular newspaper.

For three consecutive weeks beginning on January 7, 1998, and ending January 21, 1998, the Bank published a notice of sale in The Legal Reporter, and on January 29, 1998, a judicial sale was held. The Bank was the highest bidder. The Bank bid $46,359.45, the amount of money owed to the Bank by King pursuant to the mortgage. A certificate of sale was issued on January 29, 1998. On February 10, 1998, the sale was confirmed by the circuit court, and a judicial deed was issued conveying the property to the Bank.

A petition to set aside orders was filed on June 18, 1998, by King. King sought to declare all orders entered pursuant to the foreclosure action void. King alleged that the circuit court lacked personal jurisdiction over her because the Bank failed to make diligent efforts to locate her prior to resorting to publication. Jeffrey A. and Lea L. Green were also named as additional defendants. The Greens apparently purchased the property in question from King after the judicial sale. A response to the petition to set aside orders was filed on July 6, 1998. In the response, the Bank denied failing to use due diligence. On September 28, 1998, the circuit court determined as follows: "735 ILCS 5/15—1509 [(]c[)] is controling [sic]. Defendant cannot challenge the validity of the Judicial Deed. She may only claim an interest in the proceeds of the sale." The circuit court granted King leave to amend to seek the proceeds of the sale.

On October 15, 1998, King filed an amended petition seeking the proceeds of the mortgage foreclosure sale. King claimed that the Bank did not make a diligent effort to locate her. The Bank filed a motion to dismiss King's amended petition, stating that the payoff on the mortgage at the time of the mortgage foreclosure sale was $46,359.45 and that the Bank, the highest bidder at the foreclosure sale, paid precisely that amount for the property in question. Due to these facts,

the Bank requested that King's amended petition be dismissed since there were no proceeds derived from the mortgage foreclosure sale.

The circuit court entered an order on November 24, 1998, stating that the Bank's motion to dismiss amended petition was granted on all issues except that the petition would stand on the issue of the correct amount owed to the Bank at the time of the mortgage foreclosure sale. On January 21, 1999, the Bank filed a motion for summary judgment stating that King had admitted that the amount due the bank on the date of the mortgage foreclosure was, in fact, the correct amount. King filed a motion to clarify on January 25, 1999, seeking a reconsideration of the circuit court's November 24, 1998, order. All motions were argued on January 28, 1999, and taken under advisement. On February 9, 1999, the circuit court entered an order denying King's motion to clarify and granting the Bank's motion for summary judgment. King filed a timely notice of appeal.

King argues on appeal that the circuit court's orders are void "for lack of personal jurisdiction over Appellant." More specifically, King argues that the Bank's failure to exercise due diligence to locate her and personally serve her prior to resorting to service by publication has deprived her of her real estate without due process. King is seeking damages from the Bank in the amount of the difference between the fair market value of the real estate in question on the date of the judicial sale less the amount owed to the Bank pursuant to the mortgage.

■ The standard of review for the entry of summary judgment is *de novo*. See *Shull v. Harristown Township*, 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167 (1992). Pursuant to section 2—206 of the Code of Civil Procedure, service by publication is allowed in actions affecting property. 735 ILCS 5/2—206 (West 1996). The statute requires a plaintiff to file an affidavit showing that the defendant "on due inquiry cannot be found *** so that process cannot be served upon him or her" and "stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained." 735 ILCS 5/2—206 (West 1996). The defendant may challenge such affidavit by filing an affidavit showing that upon due inquiry he could have been found. Upon the defendant's challenge, the plaintiff must produce evidence establishing due inquiry. See *Household Finance Corp. III v. Volpert*, 227 Ill. App. 3d 453, 454-55, 592 N.E.2d 98, 99 (1992).

The record reveals the following facts surrounding the Bank's attempts at personal service of process on King. The Bank's counsel, Chadwick Kasten, filed an affidavit for publication on September 5, 1997. Within the affidavit, Kasten stated that he had made a "due and

diligent inquiry" to find King and that "upon due inquiry" she could not be found so that process could be served upon her "nor on diligent inquiry can the places of residence of any of *** [the defendants] be ascertained." Tom Tschudy, the Bank's vice president, signed an affidavit stating: "The collection department of the bank has made repeated, but unsuccessful attempts to locate Janet King. It is my belief that she has left the local area." Gene Smith, a private investigator employed by Kasten to ascertain whether the residence that is the subject of the aforementioned mortgage was occupied or vacant, signed an affidavit also. Smith's affidavit stated as follows: "I visited the home on July 18, 1997. I knocked on the door and there was no answer. I looked in the windows. There was no furniture or any other items in the house to suggest that the home was occupied. *** In my opinion, the home is vacant."

On November 7, 1997, Kasten filed a certificate of service stating that he served a copy of the complaint of foreclosure, the affidavit as to unknown owners and nonrecord claimants, the affidavit for publication, the notice of publication of notice of foreclosure, the notice of foreclosure, the notice of *lis pendens*, an attorney affidavit, the motion for default and judgment of foreclosure and sale, and a notice of hearing, by depositing said documents in the United State Post Office mailbox in an envelope plainly addressed to Ms. Janet King, P.O. Box 24163, University City, MO 63130—0163, with postage fully prepaid on November 7, 1997. There is no evidence in the record that this envelope was returned to Kasten. We also note that the invoice from Kasten to the Bank states that on September 30, 1997, he drafted and mailed a letter to Janet King.

■ Once the Bank filed the affidavit pursuant to the language used in the statute, it became incumbent upon King to file an affidavit stating that upon "due inquiry" she could have been found. King did nothing until June of 1998, when she filed the petition to set aside the sale of the property. In fact, she never filed an affidavit or even suggested in her petition that upon "due inquiry" she could have been found. The only address in the record is a post office box address in Missouri. Additionally, the property that is the subject of this appeal appeared to be vacant when the Bank sent a private investigator to the residence. The allegation in her petition that states that "[p]laintiff did not make a diligent effort to attempt to locate the whereabouts" of King was merely conclusory. Since King did not properly challenge the Bank's affidavit that she could not be found, we conclude that the trial court's findings were correct.

Although King appears to suggest that notice by publication is never appropriate, even when a property owner cannot be located, the

legislature has determined otherwise. See 735 ILCS 5/2—206 (West 1996). We also reject King's argument that notice by publication is a violation of due process. Numerous cases are found in which similar contentions have been made and decided adversely. These cases hold that service by publication satisfies the requirement of due process of law. See *Schultz v. Walker*, 130 F.2d 907, 909 (7th Cir. 1942) (and cases cited therein).

King also claims that she is entitled to damages from the Bank for the difference between the fair market value of her property on the date of the judicial sale less the amount owed to the Bank pursuant to the mortgage. We note from the outset that King has failed to cite any authority for this proposition. We also note that King failed to present an appraisal of the property in question to the trial court and that the record is devoid of any information concerning the fair market value of the property on the date of the judicial sale.

■ The law is clear that the Bank is entitled to a priority lien on the proceeds from the sale of the property in question. Section 15—1301 of the Illinois Mortgage Foreclosure Law states as follows:

> "[F]rom the time a mortgage is recorded it shall be a lien upon the real estate that is the subject of the mortgage for all monies advanced or applied or other obligations secured in accordance with the terms of the mortgage or as authorized by law, including the amounts specified in a judgment of foreclosure in accordance with subsection (d) of Section 15—1603." 735 ILCS 5/15—1301 (West 1996).

What King fails to understand is that section 15—1509 of the Illinois Mortgage Foreclosure Law bars all claims of parties and nonrecord claimants after the vesting of title after a foreclosure sale *except against the proceeds of the sale*. 735 ILCS 5/15—1509 (West 1996). Section 15—1509(c) reads as follows:

> "(c) Claims Barred. Any vesting of title by a consent foreclosure pursuant to Section 15—1402 or by deed pursuant to subsection (b) of Section 15—1509, unless otherwise specified in the judgment of foreclosure, shall be an entire bar of (i) all claims of parties to the foreclosure and (ii) all claims of any nonrecord claimant who is given notice of the foreclosure in accordance with paragraph (2) of subsection (c) of Section 15—1502, notwithstanding the provisions of subsection (g) of Section 2—1301 to the contrary. Any person seeking relief from any judgment or order entered in the foreclosure in accordance with subsection (g) of Section 2—1301 of the Code of Civil Procedure *may claim only an interest in the proceeds of sale*." (Emphasis added.) 735 ILCS 5/15—1509 (West 1996).

When interpreting a statute, we must ascertain and give effect to the intention of the legislature. The most reliable indicator of legisla-

tive intent is the language of the statute, which is given its plain and ordinary meaning. When the language of the statute is clear and unambiguous, we must give it effect as it is written, without reading into it exceptions, limitations, or conditions that the legislature did not express. We should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the statute. Since the construction of a statute is an issue of law, our review is *de novo*. See *Peterson v. Aldi, Inc.*, 288 Ill. App. 3d 57, 63, 679 N.E.2d 1291, 1295 (1997).

■ Section 15—1509 plainly states that King may claim only an "interest in the proceeds of sale." 735 ILCS 5/15—1509 (West 1996). It is undisputed that the Bank paid the exact amount for King's property as she owed the Bank. Hence, the Bank's priority lien was paid, and there were no "proceeds" from which King could recover. There is no language contained within section 15—1509 that states that any amounts are recoverable if the fair market value exceeds the amount owed to the Bank. Hence, when reviewing the statute, it is clear that the legislature intended to grant the property owner a claim against any amount greater than that secured by the mortgage and to bar all other claims.

Similar arguments have been made in other cases. In *Illini Federal Savings & Loan Ass'n v. Doering*, 162 Ill. App. 3d 768, 516 N.E.2d 609 (1987), this court determined that, absent evidence of mistake, fraud, or a violation of duty by the officer conducting the sale, a mere inadequacy of price alone is not sufficient cause for setting aside a judicial sale. It is clear that the law intends to provide stability and permanency to judicial sales, and since " '[i]t has long been recognized that property does not bring its full value at forced sales, and that price depends on many circumstances from which the debtor must expect to suffer a loss' [citation], it follows that '[m]ere inadequacy of price is no reason for upsetting a judicial sale unless there are other irregularities.' [Citation.]" *Doering*, 162 Ill. App. 3d at 771-72, 516 N.E.2d at 611-12. The *Doering* court stated that there is no requirement that foreclosed property be sold for its appraised value, which may or may not reflect the price that could be obtained upon sale of the property. The court has, however, long had the discretion to disapprove a judicial sale "where the amount bid is so grossly inadequate that it shocks the conscience of a court of equity." *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, 288, 8 N.E.2d 671, 676 (1937).

Additionally, in *Lyons Savings & Loan Ass'n v. Gash Associates*, 189 Ill. App. 3d 684, 545 N.E.2d 412 (1989), the defendant submitted fairly recent appraisals by affidavit that showed the value of the premises at 25% to 45% in excess of the judicial sale. Affidavits were

tendered by the plaintiff placing the value just below the bid price. The *Gash Associates* court affirmed the trial court's determination that the bid was not grossly inadequate.

Even though the disparity between the defendants' appraisal and the bid price was greater in the decision of *Resolution Trust Corp. v. Holtzman*, 248 Ill. App. 3d 105, 618 N.E.2d 418 (1993), than it was in the *Gash Associates* case, the court noted that the appraisal in the *Holtzman* case was more remote in time and was of less probative value. The *Holtzman* case states: "We do not believe that the General Assembly intended to require an extended evidentiary hearing after each sheriff's sale. To determine the extent of the hearing to be afforded the mortgagor, the court should look to the [mortgagor's] petition or motion and *if there is an allegation of a current appraisal or other current indicia of value* which is so measurably different than the sales price as to be unconscionable, then a hearing should be afforded the defendant. On the other hand, if the allegation of unconscionability rests on an appraisal rendered remote in time, the requisite of a formal hearing is not required." (Emphasis added.) *Holtzman*, 248 Ill. App. 3d at 115, 618 N.E.2d at 425-26.

King did not intervene in this case until more than four months subsequent to the time that the judicial deed was issued to the Bank. Additionally, when King filed her petition to set aside, she never offered an appraisal of the property nor did she claim that she possessed an appraisal of the property in order to show that the amount that the Bank paid for the property was unconscionable. Again, King has merely made conclusory allegations that are not supported by any evidence contained within the record on review. Hence, pursuant to the *Holtzman* case, a formal hearing was not required.

Section 15—1509 bars all claims of parties and nonrecord claimants after the vesting of title after a foreclosure sale, except against the proceeds of sale. The Bank's priority lien was for the exact amount that the Bank paid for the property. Since there were no "proceeds" for King to claim and because King offered no proof of the value of the property in question, we affirm the circuit court's orders entered on February 9, 1999.

Affirmed.

GOLDENHERSH, P.J., and KUEHN, J., concur.