# Illinois Official Reports

## Appellate Court

---

**People v. Bailey, 2016 IL App (3d) 140207**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS BAILEY, Defendant-Appellant. |
| District & No. | Third District <br> Docket No. 3-14-0207 |
| Filed | August 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 05-CF-787; the Hon. Robert P. Livas, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Jessica Wynne Arizo, both of State Appellate Defender's Office, of Elgin, for appellant. <br><br> James Glasgow, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. <br> Justice Wright concurred in the judgment and opinion. <br> Justice McDade dissented, with opinion. |

**OPINION**

¶ 1 The defendant, Dennis Bailey, appeals the trial court's denial of his motion for leave to file a successive postconviction petition. Because we find that (1) the trial court did not err in allowing the State to respond to the defendant's motion for leave to file a successive postconviction petition and (2) the defendant's motion for leave to file a successive petition failed to state a colorable claim of actual innocence, we affirm the trial court's denial of the motion.

¶ 2                                                    FACTS

¶ 3 In July 2005, the defendant was indicted on two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)) and four counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2004)) for acts committed against his two nieces, S.B. and K.B., in June and July 2004. At the time the conduct allegedly occurred, the defendant was living with S.B. and K.B. in the apartment of their mother, Regina B. S.B. was 14 years old, and K.B. was 10 years old.

¶ 4 A jury trial was held. Regina B. testified that she was the defendant's sister. In the summer of 2004, the defendant lived with Regina and her two daughters, K.B. and S.B. The defendant babysat K.B. and S.B. while Regina was at work. Regina believed that the defendant was too strict with K.B. and S.B. because he told them to do things they did not want to do, like cleaning their room and washing dishes. K.B. and S.B. complained to Regina about the defendant making them do chores.

¶ 5 S.B. testified that she was 14 years old in the summer of 2004. One morning in the middle of June, the defendant woke S.B. in her room. K.B. and S.B.'s friend Carmen were in the room sleeping as well. The defendant told Carmen and K.B. to go to Carmen's house next door. Carmen and K.B. left. S.B. walked into the living room, and the defendant pushed her against the wall and put his hands around her neck. The defendant told S.B. that if she did not "give it to him," he would "take it" when she was asleep. The defendant told S.B. he would kill her and hurt her family if she told anyone.

¶ 6 The defendant removed S.B.'s pants and told her to go to her bedroom. S.B. went to her room, and the defendant told her to remove her remaining clothes. The defendant removed his clothes and told S.B. to lie across the bed. The defendant licked S.B.'s vagina and touched her breasts. The defendant then put his penis in S.B.'s vagina for about 30 minutes. When he finished, he told S.B. to clean herself up. S.B. put her clothes on and went to Carmen's house. The next day, the defendant gave S.B. $50 and a jersey. He later gave her a cell phone. S.B. never told her mother because she was scared. S.B. called the police approximately one month later on July 22, 2004, because K.B. told her that the defendant did the same thing to her.

¶ 7 K.B. testified that she was 10 years old in the summer of 2004. One morning in June 2004, the defendant went into K.B.'s bedroom while she was sleeping. No one else was home. The defendant told K.B. to remove her clothes because he was going to "whoop" her. K.B. removed her clothes, and the defendant told her to lie on the bed and open her legs. The defendant then licked K.B. between her legs. K.B. started crying, and the defendant put a pillow over her face. The defendant then tried to insert his penis inside K.B., but he did not actually insert it. The defendant then told K.B. to take a bath. The defendant told K.B. that he

would kill her mother and ruin the family if she told anyone. A few days after the incident, K.B. asked the defendant why he did that to her since he had a girlfriend. The defendant said he did not want to catch AIDS.

¶ 8 Approximately a week and a half after the first incident, the defendant again woke K.B. up in the morning. No one else was home. The defendant told K.B. to remove her clothes. She did as he asked. The defendant licked K.B.'s vagina. K.B. was crying loudly. The defendant tried to insert his penis in K.B.'s vagina, but he did not actually insert it. K.B. then saw some white liquid on the bed. The defendant got a towel and wiped the white liquid off the bed. The defendant told K.B. to take a bath. He told K.B. not to tell anyone or he would "mess up" the family. After the second incident, the defendant told K.B. that he did not really need a girlfriend because he could just have sex with K.B. and S.B.

¶ 9 About a week after the second incident, K.B. and her five-year-old niece were sleeping in K.B.'s bed. K.B. felt someone playing with her underwear. She woke up and saw the defendant. The defendant licked K.B. between her legs and then tried to put his penis inside her. K.B. tried to wake her niece, but she would not wake up. The defendant then left and told K.B. to go back to sleep.

¶ 10 K.B. told her older sister Christina what had happened about a week and a half later.

¶ 11 The defendant testified against counsel's advice. The defendant denied that he assaulted K.B. and S.B. The defendant pointed to several incidents where S.B. was angry with him for various reasons. Specifically, the defendant testified that S.B. was angry with him after he pushed her during an argument. S.B. tried to call the police and threatened to get the defendant in trouble for "putting [his] hands on her." She was also angry that the defendant and his girlfriend told others that they had seen one of S.B.'s friends in an alley and it appeared that she had been having sex. S.B. told the defendant that she was going to "get" him for causing trouble for her friend.

¶ 12 The jury found the defendant guilty on all counts. The trial court sentenced the defendant to 57 years' imprisonment on each count of predatory criminal sexual assault and 30 years for each count of aggravated criminal sexual abuse, all to run consecutively, for a total of 234 years' imprisonment.

¶ 13 The defendant appealed. We vacated one of the defendant's convictions for aggravated criminal sexual abuse on one-act, one-crime principles and affirmed the defendant's remaining convictions. *People v. Bailey*, No. 3-06-0205 (2008) (unpublished order under Supreme Court Rule 23).

¶ 14 The defendant filed an initial *pro se* postconviction petition, arguing various issues related to the alleged ineffectiveness of trial and appellate counsel. The trial court summarily dismissed the defendant's petition. On appeal, we affirmed the trial court's summary dismissal. *People v. Bailey*, 2011 IL App (3d) 090705-U, ¶¶ 18-19.

¶ 15 On October 29, 2013, the defendant filed a motion for leave to file a successive postconviction petition along with a successive petition, which are the subject of the instant appeal. The defendant's petition contained, *inter alia*, a claim of actual innocence. The defendant attached an affidavit from his other sister, Dorothy B., which was notarized on October 22, 2013. Dorothy's affidavit stated that the defendant called Dorothy from prison during a family cookout on September 22, 2012, and asked to talk to S.B. S.B. refused to talk to the defendant. Dorothy asked S.B. why she would not talk to the defendant, and S.B. told

Dorothy that "this [had] been eating at her conscience." S.B. said that she told her boyfriend about a fight she had with the defendant and that she wanted the defendant out of the house and in jail for putting his hands on her. S.B.'s boyfriend influenced her to call the police and accuse the defendant of raping her. S.B. admitted to Dorothy that she encouraged K.B. to make up similar claims. S.B. told Dorothy that the Joliet police knew she lied, and a police officer threatened to arrest her for making a false 911 call and wasting their time. S.B. tried to correct things, but her mother told S.B. not to do anything because S.B. would get into trouble. Both of Dorothy's sons were present during S.B.'s confession. Dorothy informed the defendant about her conversation with S.B. in a written letter a few days later.

¶ 16    At a hearing on November 20, 2013, at which the defendant was not present, the trial court asked the State if it had received the defendant's motion for leave to file a successive postconviction petition. The prosecutor replied that she had reviewed the motion and asked the trial court if it would like her to respond orally or in writing. The trial court replied, "Orally." The prosecutor then argued that the petition did not meet the cause and prejudice test. The prosecutor claimed all the allegations raised therein could have been raised or were raised in the defendant's first postconviction petition except for a claim of ineffective assistance of postconviction appellate counsel. The prosecutor noted, however, that the defendant's motion failed to explain what issues postconviction appellate counsel should have raised in the appeal of the dismissal of his first petition. The trial court replied, "I will be brief. I concur." The trial court entered a written order denying the defendant's motion for leave to file a successive postconviction petition.

¶ 17                                              ANALYSIS
¶ 18                    I. State's Argument Against the Defendant's Motion
¶ 19    On appeal, the defendant initially argues that the trial court's denial of his motion for leave to file a successive postconviction petition should be vacated and the matter remanded because the State improperly argued against the defendant's motion.

¶ 20    At the outset, we note that the instant appeal does not involve a filed postconviction petition, but instead a *motion for leave to file* a successive postconviction petition. We find this distinction significant and emphasize the rule of law that parties are generally permitted to respond to motions filed by the opposing party. See *People v. Shellstrom*, 345 Ill. App. 3d 175, 179 (2003). Accordingly, we hold that the proper inquiry in the instant appeal is whether section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2012)) creates an exception *prohibiting* the State from filing a response to a defendant's motion for leave to file a successive petition.[1]

¶ 21    Section 122-1(f) of the Act provides, in its entirety:

       "(f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner

---

[1]The dissent believes the applicable question is whether the Act *authorizes* input from the State in response to a defendant's motion. As noted above, the default rule is that a party is permitted to respond to a motion filed by another party. *Shellstrom*, 345 Ill. App. 3d at 179. Unless the applicable statute (725 ILCS 5/122-1(f) (West 2012)) prohibits such a response, this default rule should apply.

shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 22   Significantly, section 122-1(f) does not prohibit input from the State on a motion for leave to file a successive petition. In *People v. Welch*, 392 Ill. App. 3d 948, 955 (2009), we held that it was not error for the trial court to allow arguments from the State as well as the defendant in determining whether the defendant satisfied the cause and prejudice test for filing a successive petition. The Fourth District also considered this issue in *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 33, and agreed that the State was not prohibited from responding to a motion for leave to file a successive postconviction petition. In so holding, the *Crenshaw* court reasoned that the State's participation at the motion stage was "consistent with the general principle that only one postconviction petition may be filed by a petitioner without leave of court." *Id.* The court further reasoned that prohibiting input from the State on a motion for leave to file a successive petition " ' "ignores the well-settled rule that successive postconviction actions are disfavored by Illinois courts." ' " *Id.* (quoting *People v. Smith*, 2014 IL 115946, ¶ 31, quoting *People v. Edwards*, 2012 IL 111711, ¶ 29). Additionally, the *Crenshaw* court reasoned that "the State has an interest in the finality of criminal litigation" and noted that "[t]he State's input can offer assistance to the trial court in making its decision whether to grant leave—assistance that may prove helpful given the issues raised and the passage of time." *Id.* We find the reasoning espoused in *Crenshaw* and *Welch* to be consistent with the plain language of section 122-1(f) and the general rule that parties are permitted to respond to motions filed by the opposing party. Thus, we find the trial court did not err in considering argument from the State on the defendant's motion for leave to file a successive postconviction petition.

¶ 23   We reject the defendant's attempt to distinguish *Welch* on the basis that the *Welch* defendant was represented by counsel on his motion for leave to file a successive postconviction petition whereas, in the instant case, the defendant filed his motion *pro se*. See *Welch*, 392 Ill. App. 3d at 955. While the *Welch* court noted the fact that both parties participated in arguments regarding the defendant's motion, it did not rely on the fact that the defendant was represented by counsel in reaching its disposition. *Id.*

¶ 24   We also reject the defendant's reliance on *People v. Gaultney*, 174 Ill. 2d 410, 419-20 (1996), for its holding that section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West 1996)) does not authorize the State to move to dismiss a postconviction petition at the first stage of proceedings but only authorizes the trial judge to make an initial independent evaluation of whether the petition is frivolous and patently without merit. Because section 122-2.1 concerns the summary dismissal of an *initial* postconviction petition under section 122-2.1 of the Act (725 ILCS 122-2.1 (West 2012)), we find that its holding is inapplicable in the instant case, which involves a motion for leave to file a *successive* petition under section 122-1(f) of the Act (725 ILCS 122-1(f) (West 2012)). See *Edwards*, 2012 IL 111711, ¶ 27.

¶ 25   Contrary to the dissent's position that *Gaultney*'s holding applies with equal force to successive petitions, we find that there are significant differences between a trial court's determination of whether to grant leave to file a successive petition and the first-stage review of an initial petition. First, allowing the State to respond to a motion for leave to file a

successive postconviction petition is consistent with the higher standard that applies to such motions as compared to initial petitions at the first stage of postconviction proceedings. While a trial court reviewing an initial petition at the first stage of proceedings need only determine whether the petition is "frivolous or patently without merit" (*id.*), a trial court determining whether to grant leave to file a successive petition must determine whether the petition sets forth a colorable claim of actual innocence or establishes cause and prejudice. *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009). Additionally, while the Act "generally contemplates" the filing of an initial postconviction petition (*id.* at 328), "successive postconviction actions are disfavored by Illinois courts." *Edwards*, 2012 IL 111711, ¶ 29; see also *Crenshaw*, 2015 IL App (4th) 131035, ¶ 33. The State's input in response to a motion for leave to file a successive petition would assist in bringing threshold deficiencies in these motions—*i.e.*, whether the petitioner has established cause and prejudice or set forth a colorable claim of actual innocence—to the trial court's attention.

¶ 26     We also reject the defendant's reliance on *Smith*, 2014 IL 115946. The *Smith* court held that "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* ¶ 35. On this authority, the defendant contends that *only* the documentation submitted by the defendant should be considered by the trial court when deciding whether to grant leave to file a successive postconviction petition. Citing *People v. Sanders*, 2016 IL 118123, ¶¶ 24-25, the dissent takes a similar position. However, in neither *Smith* nor *Sanders* did the court consider the issue of whether the State may respond to a motion for leave to file a successive postconviction petition. *Smith*, 2014 IL 115946, ¶¶ 21, 35; *Sanders*, 2016 IL 118123, ¶¶ 22, 24. Consequently, neither case foreclosed the possibility that input from the State may properly be considered by the trial court in determining whether the documentation submitted by the petitioner was sufficient to establish cause and prejudice or set forth a colorable claim of actual innocence.

¶ 27     Lastly, we reject the defendant's reliance on proposed legislation to amend section 122-1(f) of the Act to provide that the trial court's determination as to whether to grant leave of court to file a successive petition must be made "without pleadings from the State." 98th Ill. Gen. Assem., House Bill 2961, 2013 Sess. The bill at issue ended in the House *sine die* on December 3, 2014. In light of this proposed legislation, the defendant argues that the trial court's actions were "contrary to the legislature's proposed intent." The defendant in *Crenshaw* made a similar argument. See *Crenshaw*, 2015 IL App (4th) 131035, ¶ 35. As in *Crenshaw*, we note that "the legislature's 'proposed intent' is not the law, and we will not attempt to predict the future intent of the General Assembly from the scraps on the cutting room floor." *Id.*

¶ 28                    II. Denial of Motion for Leave to File a Successive Petition

¶ 29     The defendant alternatively argues that the trial court improperly denied his motion for leave to file a successive postconviction petition because he asserted a colorable claim of actual innocence.

¶ 30     As discussed above, the Act only contemplates the filing of one postconviction petition, and successive petitions are disfavored by Illinois courts. *Edwards*, 2012 IL 111711, ¶¶ 22, 29.

However, the bar against the filing of successive postconviction petitions may be relaxed when a petitioner makes a showing of actual innocence. *Id.* ¶ 23. "[A] petitioner seeking to institute a successive postconviction proceeding must first obtain 'leave of court.' " *Id.* ¶ 24 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)).

¶ 31    Our supreme court has held that "a trial court should deny leave [to file a successive postconviction petition] only in cases where, as a matter of law, no colorable claim of actual innocence has been asserted." *Id.* ¶ 30. However, the supreme court expressly declined to rule on whether a *de novo* or abuse of discretion standard of review applies in such cases. *Id.* Like in *Edwards*, we find that the defendant's claim of actual innocence fails under either standard of review. See *id.*

¶ 32    In order to state a colorable claim of actual innocence, a defendant's motion for leave and supporting documentation must "raise the probability that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* ¶ 31. The evidence in support of a defendant's actual innocence claim must be " 'newly discovered'; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 32 (quoting *Ortiz,* 235 Ill. 2d at 333). "[C]onclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result." *People v. Coleman*, 2013 IL 113307, ¶ 96.

¶ 33    We find that the defendant's motion for leave to file a successive postconviction petition failed to state a colorable claim of actual innocence because Dorothy's affidavit was not "of such conclusive character that it would probably change the result on retrial" (*Edwards*, 2012 IL 111711, ¶ 32), where the affidavit contained only impeachment evidence. See *People v. Harper*, 2013 IL App (1st) 102181, ¶ 49 ("Mere impeachment evidence will typically not be of such conclusive character as to justify postconviction relief."). Dorothy's affidavit does not indicate that Dorothy has any personal knowledge of the incidents on which the defendant's convictions are based. Rather, the affidavit conveys statements that S.B. allegedly made to Dorothy and, if accepted by the jury, could only be used to contradict and impeach S.B.'s trial testimony. Dorothy's affidavit does not establish that either S.B. or K.B. would now testify any differently than they did at the defendant's trial. Thus, Dorothy's affidavit fails to "raise the probability that it is more likely than not that no reasonable juror would have convicted [the defendant] in the light of the new evidence." *Edwards*, 2012 IL 111711, ¶ 31.

¶ 34                                    CONCLUSION
¶ 35    The judgment of the circuit court of Will County is affirmed.

¶ 36    Affirmed.

¶ 37    JUSTICE McDADE, dissenting.
¶ 38    The majority has affirmed the trial court's denial of defendant's motion for leave to file a successive postconviction petition. In reaching that decision, the majority analyzed the question of whether the trial court erred in allowing the State to move to dismiss defendant's motion and concluded that there was no error. It is from both that threshold issue and the resulting decision to affirm the denial of leave that I respectfully dissent.

¶ 39     The majority's analysis begins with the statement that the relevant section of the statute, section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2012)), "does not prohibit input from the State" on defendant's motion for leave to file his successive petition. I would argue that the appropriate inquiry is not whether the statute prohibits State input but whether it authorizes such input. The question before us is one of simple statutory construction.

¶ 40     Before getting into how I believe that process impacts the instant case, however, I would like to briefly address the two cases on which the majority relies: this court's decision in *People v. Welch*, 392 Ill. App. 3d 948 (2009), and the Fourth District's decision in *People v. Crenshaw*, 2015 IL App (4th) 131035.

¶ 41     First, with regard to *Welch*, Justice Holdridge, who is the author of the current majority opinion, and I were both on the *Welch* panel. Our only "analysis" of the issue of "whether the trial court erred by considering the State's objection and the arguments of the parties when it denied Welch's motion for leave to file a successive postconviction petition" was the following sentence: "The parties have not offered, and we have not found, any authority prohibiting input from the State at this stage of postconviction proceedings." We then simply found no error in the trial court's ultimate determination that Welch had failed to satisfy the cause and prejudice requirements. *Welch*, 392 Ill. App. 3d at 955. In *Crenshaw*, 2015 IL App (4th) 131035, ¶ 33, the Fourth District "agree[d] with the Third District's finding that the State is not prohibited from providing its input at the motion stage." We did not make that finding, nor, regrettably, did we do any analysis.

¶ 42     Notably, the decisions in *Welch*, *Crenshaw*, and the instant case all rest on the conclusion that State input is not "prohibited" by the applicable section of the statute. I believe the real question is whether the statute authorizes input from the State—an issue that is easily resolved by construing the statutory language.

¶ 43     Under principles of statutory construction, our primary goal is to determine the legislative intent, which is best shown by looking to the statute's language. *People v. Smith*, 236 Ill. 2d 162, 167 (2010). To that end, the language of a statute is to be given its plain and ordinary meaning. *First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1058-59 (2000). When the language of the statute is clear and unambiguous, the court should not add exceptions, limitations, or conditions that the legislature did not express. *Id.* "In determining the plain meaning of a statute's terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting the statute. *** Statutes such as this, which are in derogation of the common law, must be strictly construed." *Smith*, 236 Ill. 2d at 167. " 'The rule in Illinois is that statutes in derogation of the common law are to be strictly construed *in favor of persons sought to be subjected to their operation.*' " (Emphasis added.) *People v. Perry*, 224 Ill. 2d 312, 332 (2007) (quoting *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213, 220 (1978)).

¶ 44     The applicable section of the Act reads, in its entirety, as follows:

    (f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner

shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2012).

¶ 45   Considering the language of the statute and the rules of construction, there are four compelling reasons why the majority's finding that the trial court did not err in allowing the State to respond to the defendant's motion for leave to file a successive postconviction petition was itself error. I acknowledge the argument of the majority that we deal here with a *motion*—a pleading that ordinarily presumes an absolute right to respond. I believe the four arguments I have set out below make a compelling showing that such a presumption is inconsistent with the supreme court's prior construction of the statute as a whole and should not direct our decision.

¶ 46   First, section 122-1(f) clearly spells out what the court can utilize to decide whether to grant leave. Its plain language allows the court to grant leave to file a successive petition only if "*a petitioner* demonstrates cause *** and prejudice*"; "(1) *a prisoner shows cause* *** and (2) *a prisoner shows prejudice.*" (Emphases added.) 725 ILCS 5/122-1(f) (West 2012). The language directing that the requisite showing be made to the court by the petitioner is unambiguous, and there is nothing within that language that either states or implies that the court can rely on anything other than the defendant's submissions. The import of the legislature's actual language is shown even more clearly in *People v. Sanders*, 2016 IL 118123. *Sanders* was a case in which the successive petition raised a claim of actual innocence, and the issue of State input was *not* specifically before the court. The *Sanders* court said:

> "This court held in *Edwards* that leave of court to file a successive postconviction petition should be denied only where it is clear *from a review of the petition and attached documentation* that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence. In other words, leave of court should be granted where *the petitioner's supporting documentation raises the probability* that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. [Citation.]" (Emphases added.) *Id.* ¶ 24.

¶ 47   The *Sanders* court then said, relative to a case in which no motion for leave to file had been submitted:

> "Nonetheless, this court has held that the trial court may rule on a successive postconviction petition where leave to file has not been sought *when documents submitted by a petitioner supply an adequate basis to determine whether the petitioner has sufficiently alleged cause and prejudice (People v. Tidwell*, 236 Ill. 2d 150, 152 (2010)) or actual innocence (*Edwards*, 2012 IL 111711, ¶ 24))." (Emphasis added.) *Id.* ¶ 25

¶ 48   These quoted statements from *Sanders* and *Edwards* confirm that the decision on whether to grant leave to file a defendant's successive postconviction petition should rest on the content of the petition and its supporting documentation and that the decision should be made solely through exercise of the court's discretion.

¶ 49   Second, there is no language in section 122-1(f) directing or even allowing the State to file a response. It is clear that the legislature knows how to give that permission since in section 122-5 (725 ILCS 5/122-5 (West 2012)), it expressly allows the State to answer or move to dismiss the petition. To find authorization for the State to respond to the motion for leave to file the petition, it is necessary to read language into section 122-1(f) that the legislature has not seen fit to include.

¶ 50 Third, in keeping with the principle of construction that "we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting the statute" (*Smith*, 236 Ill. 2d at 167), the supreme court's finding in *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996), that the first time the Act provides for any input from the State is at the second stage of proceedings is dispositive of the question presented in the instant case. In *Gaultney*, the supreme court construed section 122-2.1, which applies once the petition has actually been filed, and not, as here, where the question is whether leave should be granted to file the petition at all. Nonetheless, the statutory construction analysis is the same.

¶ 51 In *Gaultney*, the court stated:

"At this [first] stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State. Instead, the circuit court considers the petition independently, without any input from either side. To survive dismissal at this stage, a petition need only present the gist of a constitutional claim. (Citation). This is a low threshold and a defendant need only present a limited amount of detail in the petition. At this stage, a defendant need not make legal arguments or cite to legal authority. [Citation.] ***

The proceeding then advances to the second stage. At the second stage, the circuit court appoints counsel to represent an indigent defendant. [Citation.] Counsel may file an amended post-conviction petition. Also at this second stage, the Act expressly provides that the State may file a motion to dismiss or answer to the petition. [Citation.] Section 122-5 specifically contemplates that the State will file a motion to dismiss or answer *after* the circuit court has evaluated the petition to determine if it is frivolous." (Emphasis in original.) *Gaultney*, 174 Ill. 2d at 418.

¶ 52 The supreme court has thus determined that the legislature intended no role for the State to play in the postconviction process until the second stage when the defendant is represented by counsel and the resolution of the claims raised in the postconviction petition rests on both law and facts. Like section 122-2.1, section 122-1(f) does not (1) authorize any further pleadings from either the defendant or the State or (2) require the defendant to make legal arguments or cite to legal authority. There is no principled basis for exempting this single subsection of the Act from *Gaultney*'s finding.

¶ 53 Fourth, I would find, considering the statute as a whole and with the intent of avoiding absurd results, that the cause and prejudice determination for a *successive* petition is the effective substitute for and the procedural equivalent of the first-stage assessment of whether the initial petition is frivolous and patently without merit. Once the trial court has determined pursuant to section 122-1(f) that the petitioner has made the requisite showing of cause and prejudice and has allowed the filing of the successive petition, it is simply not possible for it to then find, pursuant to a first-stage analysis as set out in section 122-2.1, that the now-filed petition is frivolous and without merit. The decision that it is not has already been made. Certainly the burdens are different. The showing required to establish the seriousness and merit of the successive petition—cause and prejudice—is significantly more substantial than that imposed on the first-time petitioner—the gist of a constitutional claim. But the ultimate determination—that the petition under consideration is neither frivolous nor patently lacking in merit—is the same. First-stage analysis under section 122-2.1 would be duplicative, superfluous, and absurd. Again, for this additional reason, the *Gaultney* decision applies with equal force to both section 122-1(f) and 122-2.1.

¶ 54    Based on the foregoing analyses, I would find that there is no language in the statute that allows the State to interpose a motion to dismiss in conjunction with the trial court's determination of whether the defendant has adequately shown cause and prejudice and whether the postconviction petition should be filed. The State's oral motion to dismiss was contrary to the legislative intent, and it was error for the court to allow it.

¶ 55    The *Gaultney* court also considered the effect of the State's untimely filing of a motion to dismiss, stating:

> "Several appellate decisions have considered the situation where the State files a motion before the circuit court has decided whether the petition is frivolous. [Citations.] These courts have consistently found that the filing of a motion at this stage is premature and improper under the Act. [Citation.] The sections of the Act, when considered collectively, do not authorize the filing of a motion to dismiss at the first stage.
>
> The mere early filing of a motion or responsive pleading by the State, however, does not *per se* contaminate the circuit court's determination pursuant to section 122-2.1. [Citation.] The premature filing of a motion to dismiss does not prevent the circuit court from independently evaluating whether a post-conviction petition is frivolous or patently without merit, as required by the Act. *Rather, reversal is required where the record shows that the circuit court sought or relied on input from the State when determining whether the petition is frivolous.* [Citations.]" (Emphasis added.) *Gaultney*, 174 Ill. 2d at 419-20.

¶ 56    The court agreed with the appellate approach and held that: "Where the record gives no indication that the trial judge sought input from the State or relied on the motion to dismiss, we presume that the judge acted properly." *Id.* at 420. By contrast, the record in the instant case clearly shows that the trial court sought the State's oral motion to dismiss, agreed with the State's argument on the record, and on this basis denied defendant leave to file his successive petition.

¶ 57    In this circumstance, the trial court's denial of leave to file the successive postconviction petition must be reversed and the matter remanded to the circuit court of Will County for consideration of the defendant's request for leave to file without input from the State. No further consideration of the court's resolution is necessary or proper.