2022 IL App (2d) 200182-U
No. 2-20-0182
Order filed May 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08-CF-5371 |
| ROYAL M. COOPER, | ) ) ) | Honorable Christopher R. Stride, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly dismissed defendant's postconviction petition at the second stage, without a third stage evidentiary hearing; (1) while defendant presented new, material, and noncumulative evidence of actual innocence, that evidence was not so conclusive that it would probably change the result on retrial; (2) posttrial claim that trial counsel was ineffective was barred, as defendant had raised claims of ineffectiveness of counsel on direct appeal. Affirmed.

¶ 2   Defendant, Royal M. Cooper, appeals from the trial court's second-stage dismissal of his petition for postconviction relief brought pursuant to the Post–Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq*. (West 2020)). Defendant now contends that the trial court's dismissal should be reversed and the cause remanded for a third-stage evidentiary hearing because his petition made

a substantial showing (1) of actual innocence; and (2) that trial counsel was ineffective for failing to impeach the victim with prior inconsistent statements. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Following a jury trial, defendant, Royal M. Cooper, was found guilty of two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(4) (West 2008)) and one count of unlawful restraint (720 ILCS 5/10-3(a) (West 2008)) on May 21, 2009. The trial court merged the unlawful restraint count into the aggravated criminal sexual assault counts and sentenced defendant to consecutive 10- and 11-year sentences in the Illinois Department of Corrections on July 24, 2009. This court affirmed defendant's convictions on direct appeal in *People v. Cooper*, 2011 IL App (2d) 090813-U.

¶ 5    In January 2013, defendant filed a *pro-se* postconviction petition alleging actual innocence and trial counsel's ineffectiveness for failing to impeach the victim, MM, and failing to subpoena witnesses. The trial court found that stated the gist of a constitutional claim and advanced the petition to the second stage of proceedings. The trial court also appointed counsel, Alex Rafferty, who filed an amended petition, adding a claim that defendant's conviction was based on false testimony. After a hearing, the trial court granted the State's motion to dismiss the amended petition, holding that the claim of actual evidence failed because the information contained in the petition was neither newly discovered nor conclusive, and the claims that had been addressed on direct appeal were procedurally barred.

¶ 6    Defendant then filed a *pro se* motion for rehearing that also raised Rafferty's ineffectiveness. The trial court discharged Rafferty and appointed Thomas Meyers as counsel. Meyers filed a motion to reconsider the dismissal of the postconviction petition. Meyers also alleged that Rafferty had failed to file a certificate pursuant to Supreme Court Rule 651(c) (Eff.

July 1, 2017).  The trial court granted the motion, vacating its order of dismissal and granting leave to file an amended petition as necessary.

¶ 7    Meyers then filed a supplemental petition for postconviction relief adopting both defendant's *pro se* petition and Rafferty's amended petition.  Meyers also added a claim of defendant's own ineffectiveness as appellate counsel on his direct appeal.  After a hearing, the trial court granted the State's motion to dismiss the supplemental petition.  This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9    The Act provides a statutory remedy to criminal defendants who claim that their constitutional rights were substantially violated at trial.  *People v. Edwards*, 2012 IL 111711, ¶ 21. A petition brought pursuant to the Act is not a substitute for an appeal but is a collateral attack on a final judgment.  *Id.*  If, as here, a petition is not dismissed as frivolous or patently without merit at the first stage, it proceeds to the second stage.  *People v. Turner*, 2012 IL App (2d) 100819, ¶ 19. At the second stage, the State may either answer or move to dismiss the petition.  725 ILCS 5/122– 5 (West 2020).  The trial court then determines if the petition alleges a substantial showing of a constitutional violation.  *Turner*, 2012 IL App (2d) 100819, ¶ 19.

¶ 10    At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record must be taken as true.  *People v. Robinson*, 2020 IL 123849, ¶ 45.  In deciding the legal sufficiency of a petition, the court is precluded from making factual and credibility determinations.  *Id.*  If the allegations and accompanying affidavits demonstrate a substantial violation of a defendant's constitutional right, the petition proceeds to the third stage, at which point the court conducts an evidentiary hearing.  *Turner*, 2012 IL App (2d) 100819, ¶ 20.

¶ 11 A defendant is not entitled to an evidentiary hearing as a matter of right. *Id.* Dismissal of a postconviction petition is warranted at the second stage where the defendant's claims, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *Id* ¶ 21. At that stage, the defendant's factual allegations not rebutted by the trial record are taken as true. *Id.* When a postconviction petition is dismissed without an evidentiary hearing, we review the matter *de novo*. *Id.*

¶ 12 Defendant first contends that the cause should be remanded for a third-stage evidentiary hearing because his petition made a substantial showing of actual innocence. Substantively, to succeed on a claim of actual innocence, a defendant must present new, material, noncumulative evidence that is so conclusive that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96. "New" means that the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence; "material" means that the evidence is relevant and probative of the petitioner's innocence; "noncumulative" means that the evidence adds to what the jury heard; and "conclusive" means that the evidence, when considered along with the trial evidence, would probably lead to a different result. *Id.* Again, as defendant's petition was dismissed at the second stage, we review the judgment of dismissal to determine whether, after taking as true all of defendant's allegations that are not refuted by the record, those allegations establish or "show" a constitutional violation. See *People v. Domagala*, 2013 IL 113688, ¶ 35. "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." *Id.*

¶ 13    Defendant was convicted of forcing M.M., with whom he lived, to perform acts of oral and vaginal penetration while unlawfully restraining her.  At trial, M.M. testified that she and defendant argued about defendant talking to other women.  Defendant started screaming at her and hitting her, eventually taping her wrists and ankles together.  Defendant threatened her with a knife, trailing the blade over her body and sticking it between her toes.  He then hit her in the face seven or eight times, causing bruising.

¶ 14    Defendant then grabbed her by the back of the head, pulling out some of her hair, and demanded oral sex.  After defendant cut the tape from her, M.M. performed fellatio on him and had vaginal intercourse with him.  M.M. testified that she performed the sexual acts with defendant because she wanted him to stop hurting her.

¶ 15    Defendant and M.M. then discussed some letters that M.M. had kept from her ex-husband, and defendant hit her and threatened to blow her brains out.  Defendant then went towards a dresser in which M.M. stated defendant kept a gun.  M.M. ran to the laundry room and heard what sounded like drawers being opened.  Defendant eventually came into the laundry room without a gun. Defendant grabbed her by the shirt, took her to the bedroom, and had vaginal intercourse with her. When asked if she had wanted to have intercourse, M.M. responded, "I told you I just wanted him to stop hurting me."

¶ 16    Police officers also testified to injuries that they observed on M.M., including a cut on the chin, bruises and swelling on the forehead, bruises on the jawline, scratches on the cheek, and swelling on the shin and ankle.

¶ 17    Defendant testified that he and M.M. argued and physically fought with slaps, punches, and scratches.  M.M. pulled out a knife and stated that she would stab him, but he took the knife away from her.  They then had a "calm" 30- to 40- minute conversation about how they needed

change their relationship, after which M.M. initiated oral sex on him. He performed oral sex on her, and then they had vaginal intercourse. Afterwards, as they started talking again, he admitted seeing other women, and M.M. again grabbed the knife. Defendant made her drop the knife, and he taped M.M.'s wrists and ankles because he was tired of her grabbing the knife. M.M. did not resist, but she cried. M.M. agreed not to go for the knife again, and defendant cut off the tape. They apologized to each other and went to sleep at around 4 a.m. When defendant awoke at about 9 a.m., they had intercourse again.

¶ 18    Defendant admitted that he had a gun and ammunition in the house but denied threatening to kill M.M. or blow her brains out. He denied stopping her from leaving or forcing her to have sex.

¶ 19    In his *pro se* petition, defendant contended that his conviction was based on M.M.'s false testimony. Postconviction counsel attached the affidavit of McKinzie Robinson, the mother of several of defendant's children. Robinson stated that she knew M.M. and attempted to get in touch with her starting June 7, 2009; Robinson had heard that defendant was in jail and thought that M.M. "owed us an explanation." M.M. finally called Robinson on the telephone on August 7, 2009 (which was after defendant was sentenced). According to Robinson, M.M. told her that, on the night in question, M.M. found defendant talking on her telephone with Tiffney, the mother of one of his other children. M.M. slapped the phone out of his hand and slapped him. They argued and fought until defendant took a gun out of a drawer "to scare her." After three hours of arguing and fighting, they made up and had sex. M.M. told her that defendant had never hit her before and that defendant "just lost it" after she slapped him.

¶ 20    After having sex, M.M. and defendant went to sleep. The next morning, M.M. saw that defendant had spoken with Tiffney twice since M.M. and defendant had made up. M.M. was tired

of arguing about Tiffney and wanted defendant gone. She went to the police station and told the police that her boyfriend "had just jumped on her" and that she wanted him out of her house. The police told her that she did not look like he had jumped on her and told her to tell them everything that happened. M.M. told them that she and defendant had fought and had sex but that she did not want to. Robinson told M.M. "thats [*sic*] basically saying he raped you;" M.M. responded, "but he didn't."

¶ 21    M.M. then said that the police told her that, if she did not "stick with the rape," they would "take her kids." M.M. started crying and told Robinson that she was sorry, but defendant had to pay for hitting her and cheating on her. Robinson told M.M. that they were appealing defendant's case, and M.M. said, "thats [*sic*] good because he don't [*sic*] deserve all that time."

¶ 22    We first note that, in his brief, defendant states that, in her affidavit, Robinson swore that M.M. "recanted" her claims against defendant. This is inaccurate. To "recant" is to "withdraw or repudiate (a statement or belief) formally and publicly: RENOUNCE." See https://www.merriam-webster.com/dictionary/recant (last viewed May 4, 2022). M.M. did not publicly repudiate her trial testimony; the affidavit is not that of M.M. Robinson provided a hearsay statement alleging that M.M. told her that she lied to the police and at trial; there is no indication that M.M. would actually testify any differently now than she did at trial. See *People v. Bailey*, 2016 IL App (3d) 140207, ¶ 33. Defendant's characterization of Robinson's affidavit is not well-taken.

¶ 23    Defendant first argues that the information contained in Robinson's affidavit is newly discovered evidence. Again, newly discovered evidence is evidence that was "discovered after trial and could not have been discovered earlier through the exercise of due diligence." *Coleman*, 2013 IL 113307, ¶ 96. Clearly, the evidence here was discovered after defendant's trial. Defendant was found guilty on May 21, 2009; Robinson stated that she attempted to contact M.M.

starting in June 2009 and only spoke to M.M. in August 2009, which was after defendant had been sentenced.

¶ 24    However, the State argues that defendant "offers no explanation" as to why the evidence was not discoverable earlier through the exercise of due diligence, "particularly since Ms. Robinson was the mother of three of [defendant's] children and was familiar with the case." The State also looks for an explanation from defendant as to the "nearly five year delay in presenting Robinson's information."

¶ 25    The State's arguments miss the point. The evidence was not discoverable by defendant before trial because the conversation between Robinson and M.M. did not take place until after trial. The State seems to argue that due diligence required defendant to get Robinson or someone else to talk to M.M. prior to trial to get her to admit that she lied to the police and planned to commit perjury at trial. Very little evidence could ever be considered as "newly discovered" if due diligence required interested non-parties to contact and interrogate victims before trial to get them to change their stories, and our system of justice obviously does not operate that way. The State cites to no caselaw to support such a requirement of due diligence, and we will not find one.

¶ 26    Similarly, the State's complaint that defendant waited five years after Robinson's conversation with M.M. to bring it to the court's attention in a postconviction petition is irrelevant to an analysis of "newly discovered evidence." Again, the State cites to no caselaw to support its assertion that "newly discovered" applies to the timing of the postconviction petition rather than to the time of the trial.

¶ 27    We conclude that the information in Robinson's affidavit is evidence that was discovered after trial and could not have been discovered earlier through the exercise of due diligence. Thus, it is newly discovered evidence.

¶ 28 Defendant next argues that he made a substantial showing that the information in Robinson's affidavit is material and noncumulative. Again, "material" means that the evidence is relevant and probative of the petitioner's innocence; "noncumulative" means that the evidence adds to what the jury heard. *Coleman*, 2013 IL 113307, ¶ 96. Clearly, the evidence contained in Robinson's affidavit is both relevant to defendant's innocence and noncumulative. If, as Robinson alleges that M.M. told her, M.M. and defendant had made up and then had consensual sex, defendant did not force M.M. to engage in sex, and defendant did not commit the crime of aggravated criminal sexual assault. Robinson also alleged that M.M. told her that defendant did not rape her but that she had been threatened by the police with the seizure of her children if she did not "stick with the rape" story.

¶ 29 The State argues that the affidavit "simply mirrors the testimony defendant presented at trial" that he and M.M. fought, made up, and had consensual sex and was, thus, cumulative. However, such evidence would not merely recite the same facts defendant testified to—they would detract from the very allegations that M.M. testified to at trial. Evidence that the victim changes her testimony and agrees with what the defendant testified to is not simply parroting the defendant's testimony. Further, the allegations contained in the affidavit—that M.M. admitted that defendant did not rape her, that she only wanted defendant out of her house, and that she continued with her allegation of rape only because she had been threatened by the police with the loss of her children—were all relevant to defendant's claim of innocence and were never made at trial. The information was both material and noncumulative.

¶ 30 Having determined that the information contained in Robinson's affidavit was newly discovered, material, and noncumulative, we must determine whether it was of such a conclusive character that it would probably change the result on retrial. "The conclusive character of the new

evidence is the most important element of an actual innocence claim." *Robinson*, 2020 IL 123849, ¶ 47.

¶ 31 Again, "conclusive" means that the evidence, when considered along with the trial evidence, would probably lead to a different result. *Coleman*, 2013 IL 113307, ¶ 96. New evidence supporting an actual innocence claim need not be entirely dispositive to be likely to alter the result on retrial; instead, this element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. *Robinson*, 2020 IL 123849, ¶ 56. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.*, ¶ 48.

¶ 32 Defendant cites to a trio of supreme court cases to support his assertion that, "[w]hen considering both the old and new evidence together, this new evidence is conclusive enough to warrant an evidentiary hearing." However, each of those cases is factually distinguishable and provides little support for defendant's claims here.

¶ 33 *Robinson*, 2020 Il 123849, was an appeal from the denial of leave to file a successive postconviction petition. Our supreme court distinguished the standards applicable to such a procedural position and that of, as we have here, an appeal from a second-stage dismissal:

> "[A] petitioner who requests leave to file a successive petition *need not satisfy even the substantial showing burden to advance to the third stage*—let alone the evidentiary burden to obtain a new trial after a third-stage hearing. As explained above, the standard for alleging a colorable claim of actual innocence *falls between the first-stage pleading requirement for an initial petition and the second-stage requirement of a substantial showing*. [Citations.]" (Emphases added.)" *Robinson*, 2020 Il 123849, ¶ 54.

Thus, the new evidence proffered in *Robinson*, while found to be conclusive, was found to be so at a lower standard than what is required here.

¶ 34 Factually, the evidence contained in the affidavits in *Robinson* was also of greater magnitude and significance than that brought forth here. One affiant stated that, after he had seen a bright flash and heard a gunshot, he had seen a man shove an AK-style rifle into the back seat of a car and drive away with two other men. When he later met the defendant in prison and learned that defendant had been convicted of murder in the shooting that affiant had witnessed, he realized that the defendant was not one of the men that he had seen that night. *Robinson*, 2020 IL 123849, ¶¶ 25-26. Another affiant stated that, on the night of the shooting, he was in an alley and saw a car with three men, all of whom he recognized, pull up. He knew one man well, and he shook hands with him. He saw another man with an AK-style rifle get out of the car, disappear down the alley, and return empty-handed. The three men then drove away. The affiant stated that he could say " 'with absolute certainty' " that defendant was not in that car. *Id.*, ¶ 27. A third affiant stated that he was at a gas station when he saw a car with three men pull in. He recognized the driver as a former fellow gang member and the other two as gang members. He spoke to the driver, who stated that he had killed the sister of a rival gang member the night before. The driver removed a gas can from the floor of the front passenger side of the car and began pumping gas into it. The three then drove away. The next day, the affiant heard the news that the defendant had confessed to the killing and setting the body on fire. The affiant knew that the defendant was taking the rap for the driver, but the gang code of silence prevented the affiant from going to the police. *Id.*, ¶¶ 28-29. Our supreme court found this evidence was "of such a conclusive character that, when considered along with the trial evidence, would probably lead to a different result" and reversed the denial of leave to file a successive postconviction petition. *Id.*, ¶ 83.

¶ 35    The affidavits in *Coleman*, 2013 IL 113307 and *People v. Ortiz*, 235 Ill. 2d 319 ((2009) were of similar consequence.[1]   In *Coleman*, five affiants stated that they were present for or involved in the attack that led to the defendant's conviction, and all of them insisted that the defendant was not. *Id.*, ¶103.  Some even corroborated the defendant's alibi. *Id.*, ¶ 107.  There was no forensic evidence linking the defendant to the attack, and all three of the State's identifications of the defendant at trial were significantly impeached. Id., ¶ 109.  In *Ortiz*, our supreme court found conclusive an affidavit that directly contradicted the recanted statements of the two prosecution witnesses where no physical evidence linked the defendant to a murder; the affiant stated that he witnessed the beating and shooting of the victim and that the defendant was not present at either event. *Ortiz*, 235 Ill. 2d at 336-37.

¶ 36    Here, while taking all well-pleaded facts contained in Robinson's affidavit as true (see *People v. Coleman*, 183 Ill. 2d at 380–81), we note that the evidence therein is nothing more than potential impeachment of M.M. based on alleged hearsay statements.  Hearsay affidavits are admissible in postconviction hearings under Illinois Rule of Evidence 1101(b)(3) (eff. Sept. 17, 2019).  Such affidavits must be taken as true, at this stage of the proceedings, in determining whether to advance the petition to a third-stage evidentiary hearing. *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 119.  However, mere impeachment evidence typically is not of such conclusive

---

[1] We note that both *Coleman* and *Ortiz* were appeals arising after third-stage evidentiary hearings.  Thus, the trial courts were required to make credibility determinations. See *Coleman*, 2013 IL 113307, ¶ 97.  Further, the trial courts' judgment after a third-stage hearing is reviewed for manifest error. *Id.*, ¶98.

character as to justify postconviction relief. *People v. Harper*, 2013 IL App (1st) 102181, ¶ 49. See also *Ortiz*, 235 Ill. 2d at 335. As our supreme court has stated:

> " 'A distinction is to be drawn between evidence which impeaches a witness in the sense that it affects the credibility of the witness, and evidence which is probative in that it presents a state of facts which differs from that to which the witness testified. Newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness, does not afford a basis for the granting of a new trial. If, however, it contradicts a witness by showing facts, a new trial may be ordered when it appears that such new evidence has sufficient probative force or weight to produce a result different from that obtained at the trial which has been had.' " *People v. Smith*, 177 Ill. 2d 53, 82-83 (1997) quoting *People v. Holtzman*, 1 Ill.2d 562, 568 (1953).

¶ 37 We conclude that Robinson's affidavit was not "conclusive," in that the evidence contained therein, when considered along with the trial evidence, would probably not lead to a different result. Thus, the trial court did not err in dismissing defendant's petition.

¶ 38 Defendant next contends that his petition should be set for a third-stage evidentiary hearing because trial counsel was ineffective for failing to impeach M.M. with prior inconsistent statements that she allegedly made to witnesses that counsel failed to subpoena. Defendant attached to his petition affidavits from his sisters, Marquita and Latrice Cooper, swearing that M.M. had made pretrial statements to them that defendant did not use threats or force to make her have sex with him.

¶ 39 After trial, defendant filed a *pro se* motion for a new trial, alleging, *inter alia*, that trial counsel was ineffective for "an inept attempt at impeachment of inconsistent statements of the State's witness during cross-examination" and "failure to subpoena witnesses to come on my

behalf that may have collaborated [*sic*] the self-defense issue." Counsel filed a response in which she stated that she had "subpoenaed all witnesses that were necessary to Defendant's case," specifying that she had "introduced the testimony of Ms. Tiffany Stovall in an attempt to introduce a different theory/motive for the incident."

¶ 40 The trial court treated the claims of ineffectiveness as a separate claim pursuant to *People v. Krankel*, 102 Il.2d 181 (1984). Under questioning by the court about the claims of ineffectiveness, defendant stated that "we had agreed" to subpoena several witnesses, including "both of my sisters." Counsel responded:

> "Mr. Facklam [co-counsel] and I did speak with Mr. Cooper's sister[s]. They were not there at the time of the incident. All the information they would have been providing we [*sic*] did not have firsthand knowledge in regard to the case. Therefore, it was not relevant."

¶ 41 After considering the statements of defendant and counsel, and its own recollection of the trial, the trial court concluded that defendant's claims of ineffectiveness of counsel lacked merit, and no independent counsel was appointed. The trial court then denied both defendant's *pro se* motion and counsel's motion to enter judgment of acquittal notwithstanding the verdict, or, in the alternative, to order a new trial. After sentencing, defendant filed his direct appeal.

¶ 42 On appeal, defendant raised, amongst other issues, four specific claims of ineffective assistance of trial counsel. Included in those claims was the contention that "counsel failed to subpoena witnesses who might have corroborated his self-defense claim. Defendant names Debra Gray, a friend, and Christopher Stark, McIver's son, as potential witnesses." *Cooper*, 2011 IL App (2d) 090813-U, ¶ 46. This court found that "defense counsel very competently and vigorously

represented defendant during pre-trial and post- posttrial motions, as well as during the jury trial," (*id*., ¶46) and ultimately affirmed the trial court's judgment. *Id*., ¶ 55.

¶ 43    "[W]here a petitioner has previously challenged a judgment of conviction on appeal, the judgment of the reviewing court will serve to bar postconviction review of all issues actually decided by the reviewing court as well as any other claims that could have been presented to the reviewing court." *Robinson*, 2020 IL 123849, ¶ 42. Here, defendant clearly raised on direct appeal the issue of trial counsel's ineffectiveness, including a specific claim that counsel failed to call witnesses to testify in his case. While that appellate claim did not specifically involve defendant's sisters, as the postconviction petition did, the record is clear that the issue of the failure to call defendant's sisters to testify was known and argued in the trial court before defendant's direct appeal. As this issue could have been raised in that appeal, review of this claim now is barred, and we will not consider it here.

¶ 44                                III. CONCLUSION

¶ 45    For these reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 46    Affirmed